## GUNN, ADMINISTRATOR OF SHELDON *v.* BATES.

In an action of ejectment, under a Mexican grant, *Held* by Murray, C. J., that this Court is bound to regard the decisions of the United States Supreme Court, establishing the rule that a conditional grant from Mexico conveys a good title, without performance of the conditions sufficient to maintain ejectment, and admissible to qualify the plaintiffs' actual possession. The land must belong either to the United States or the claimants under the grant—the question as to the rights of this State not being raised ; and where the highest federal tribunal, having full authority to decide these questions, has voluntarily abandoned the claim of title of the Government, it would appear strange that the Courts of this State should question the rule so established. Certainly a mere intruder cannot gainsay it.

*Held* by Terry, J., that the title of such a grantee is insufficient to maintain ejectment. Admitting that such a grant does not convey a perfect title, or one sufficient to maintain ejectment, yet an entry on the land under the grant, vested in the grantee, there being no adverse possession, the right to exclusive occupancy of the land embraced within the boundaries of his tract. The law construes the entry to be co-extensive with the grant.

It follows that the grant is admissible in evidence, to show the extent of the plaintiffs' possession, and the *animus* with which he entered.

The law does not require the whole tract to be enclosed ; it is sufficient that the grant calls for distinct boundaries.

The fact that the plaintiff stood by and permitted defendant to settle on the land, will not warrant an instruction that the plaintiff is thereby estopped from asserting his title.

Estoppels, in such cases, proceed upon the ground of fraud or culpable silence, which are facts for the jury, and not matters of legal construction by the Court.

APPEAL from the District Court of the Sixth Judicial District.

This was an action of ejectment, brought December, 1854, against E. Bates and Thomas McCartney, for certain land, consisting of about three hundred and twenty acres, near the Cosumnes river, and forming a part of a tract of five square leagues, granted by the Mexican Government to Jared Sheldon, the intestate of plaintiff. The plaintiff put in evidence a translation of the grant to Sheldon, made January 8, 1844, by Micheltorena, Governor, Commandant-General and Inspector of the Department of California.

It grants to Sheldon five leagues of land, "between the north side of

the river Cosumnes, the Rancho Omochumnes, the rocky hills, and the Pass, which, at said river, leads to Mr. Sutter's establishment; at which pass the measurement must begin—the necessary steps and investigations having been previously made, as required by laws and regulations;" and annexes the following conditions: "1. He shall neither sell, alienate nor mortgage it; impose ground rent, entail, or any other burden.  2. He may inclose it, without prejudice to the crossings, roads and privileges.  He shall enjoy it freely and exclusively, destining it to the use and cultivation which may best suit him; but within one year he shall build a house, and it must be inhabited. 3. He shall request the respective magistrate to give him juridical possession, and said magistrate shall designate the boundaries, at the limits whereof he shall place the land marks, and some fruit trees, or wild ones, of some utility.  4. The land, of which donation is made, comprises five *sitios de ganada mayor*, (square leagues,) as already mentioned, and as the respective plat explains.  The magistrate who may give possession shall have it measured according to law—the overplus, which may exceed the quantity, remaining to the nation for the uses which may be required.  5. If he transgress these conditions, he shall lose his right to the land, and it shall be denounceable by another."  The plaintiff also put in evidence the petition of Sheldon, dated April 4, 1854, to Gen. John A. Sutter, the alcalde of the frontiers, to put him in juridical possession—on the margin of which is the alcalde's consent so to do.  Plaintiff proved, by John A. Sutter, that he, Sutter, was the military commandant and judge of the district, and that he put Sheldon in juridical possession of the land described in the grant; that at that time there was no person in possession or claiming possession of any part of the land; that Sutter went with Sheldon on all parts of the tract where Sheldon wished, Sheldon pointing out the land he desired; Sutter having the grant with him at the time, and giving possession in conformity with it.  Plaintiff also proved that Sheldon had resided on and occupied the land since 1839 or 1840, and had since resided there, till he died, in 1851; that he had various improvements on the land, the greater part, however, being unenclosed; that the boundaries of Sheldon's Ranch were generally known to be those mentioned in the grant, which could be readily traced; that the land, on which defendants entered, and sought to be recovered in this action, was within the limits of the grant, but was uncultivated and unenclosed at the time of defendant's entry.  On the plaintiff's resting his case, the defendants moved to strike out the grant and petition for juridical possession, on the ground that no compliance with the conditions of the grant had been proved.  The motion was overruled, defendant excepting.  Defendants then moved for a non-suit, which was overruled.  The defendants offered and read in evidence two pre-emption claims, recorded by them in 1853, embracing the land in dispute, and proved the erection of improvements on the land.

The following instructions, asked for by defendants, were refused by the Court below:

" 1. The plaintiff has introduced in evidence a Mexican grant, and claims title under that. To sustain this action on such title, it is necessary for plaintiff to prove a performance of all the conditions of the grant, and it is for you to determine whether they have proved a performance of these conditious; and, if they have not proved the same, they cannot maintain this action upon the title acquired under this grant.

" 2. A party may maintain an action to recover the possession of land, founded upon prior possession, provided he has not abandoned or relinquished such possession; and if a party stands by and sees another take possession of a tract of land, and make valuable improvements thereon, and suffers a delay of several years to elapse before bringing suit, and gives no notice to the settler of his claim, they are circumstances tending to show an abandonment of his prior possession, and he will be estopped from asserting his title against such occupant.

" 3. The mere fact that the plaintiff or the decedent was in actual possession, by enclosing a portion of the tract described in the Mexican grant, is no evidence of possession of any land not so enclosed or marked out with clearly defined boundaries.

" 4. Possession of a portion of a large tract, under a conveyance of such larger tract, will not extend to the full extent of such larger tract, when the same amounts to several Mexican square leagues. Such constructive possession is limited to tracts of land usually occupied and used for farming purposes, in the usual course of husbandry in the country. If you believe, from the evidence, that Sheldon never had the boundaries of the tract, described in the grant, marked out, and that the same exceeds the usual limits of a farm, then his possession is limited to the land he had actually enclosed or clearly marked out; and in such case, if the tract in the possession of the defendants is not included within any such enclosure or marked boundaries, you will find for the defendant on this point." The Court, at the request of the defendant, instructed the jury that, to prove actual possession, it was necessary for the plaintiff to show that the lines and boundaries of the land claimed were distinctly marked out by some monuments, natural or artificial, by which the lines could be easily traced, and the boundaries easily known."

The Court then gave the following instruction to the jury, under the exception of the defendant:

" The question, whether the conditions of the Mexican grant to Jared Sheldon have been complied with, has nothing whatever to do with this case. As far as this case is concerned, it makes no difference whether they have been performed or not.

" If you believe, from the evidence, that Sheldon entered upon and took possession of the tract of land described in his grant, under and by virtue of that grant; that he was put in possession in the manner described by the first witness, (Gen. Sutter,) and that he immediately went on to occupy and improve, and continued to occupy and improve, a part of the land, and asserted his claim and possession to the whole,

under his grant, and no other person was in adverse possession of any portion of the land described in the grant; and that Sheldon, or his representatives, never abandoned the land; and that the premises in controversy in this suit are within the boundaries described in the grant, you will find for the plaintiff."

The jury found a verdict for plaintiff. Defendants moved for a new trial, which motion was overruled, and defendants excepted. Defendants appealed.

*Crocker & Robinson* for Appellant.

The record presents the following questions for the adjudication of the Court:

1st. Will ejectment lie under a Mexican grant without proof of a performance of the conditions.

This Court has already decided this question in the negative in several decisions, and this conclusion has been generally acquiesced in by the Courts, the Bar, and the people. Most important rights have become vested under them, and the doctrine of *stare decisis*, therefore, applies with peculiar force. The peace and harmony of the finest agricultural portions of the State would be destroyed by their reversal.

But in this case the plaintiff relied upon his claim of a possessory title, and introduced the grant, not as the foundation of his title, but merely as evidence of the extent and boundaries of his possession; so that this question is not, perhaps, fairly raised by the record.

During the argument, reference was made to the decision in the Fremont case, 17 Howard, 542, as overruling these decisions of this Court. To this we might reply, in accordance with numerous decisions of this Court, California is an independent sovereignty, and the Federal Courts have no right or power to interfere with the decisions of this Court; and if no right exists to appeal or transfer a cause from our State Courts to the Federal Courts, certainly this Court will not permit the Federal Courts to effect the same object indirectly by following their decisions, when in conflict with those of this Court. This would not only be a subserviency to federal power, but also a direct violation of well settled principles of law. Instead of the State Courts looking to the Federal Courts for rules of decision in relation to the title to real estate within the State, the Federal Courts have uniformly decided that they will follow the decisions of the State Courts on all such questions. 12 Wheat., 153; 5 Peters, pp. 400, 155, 264, 480; 6 Peters, 291; 1 ib., pp. 501, 571; 2 ib., 85; 5 Cranch., 22; 9 ib., 87; 6 Wheaton, 119; 10 ib., 152, etc.

But further the U. S. Supreme Court does not pretend to decide in that case that Fremont, or those holding under similar grants, could maintain ejectment under them.

That Court simply decided that the grant conveyed to Alvarado "a present and immediate interest," (p. 558,) "a vested interest," (p. 560,) but they nowhere say that it conveyed a perfect legal title.

2d. The plaintiff in this case seeks to evade the former decisions of

this Court, by setting up a constructive possession under the grant, contending that a party in actual possession of a portion of a tract under a deed conveying the title, is in possession to the extent of the whole tract described in the deed.

This principle has been usually applied to cases of adverse possession, under a claim of title which proved to be invalid, and where it was claimed that the right had been perfected by an adverse possession of more than twenty years. In other words it is generally used as a means of defence against the legal title, and not as constituting a legal title in itself.

The principle was, very properly, limited to small tracts of land, of the ordinary size of farms, and not to large tracts like the one in this case.

Thus, in Jackson v. Woodruff, 1 Cowen, pp. 276, 286, the Court say it will not apply to a tract of 783 acres, and the reasoning of the Court is very full and able on this point. See also, Jackson v. Richards, 6 Cowen, pp. 617, 623; Jackson v. Vermilyea, 6 ib., 677; Jackson v. Ottz, 8 Wend., 441; Simpson v. Downing, 23 ib., 321; 22 Vt., 388, 404; 9 Yerg., 463; 1 Paine C. C. R., 476.

In New York this principle was deemed so important that it was embodied in the revised statutes. See 23 Wend., 321, 322.

And in our own State the same principle has been established by statute. Compiled Laws, p. 817, §§ 10, 11.

This Court has decided that actual possession is sufficient to maintain ejectment, but that this possession must be "marked by distinct monuments of boundary, either by natural or artificial enclosure." Plume v. Thompson, Jan. T., 1854.

When the owner of land stands by and sees valuable improvements made on his land, without giving notice of his title, he will be estopped from setting up his title against such occupant. 1 Bay., 239; 1 J. C. R., 354; 4 Barr., 194; 5 J. C. R.. 184; 1 Story Eq., §§ 385, 388, 389; 1 Sch. & Lefroy, 73; 5 Vesey, 688; 7 Watts., 394; 1 Martin & Yerger, 333; 1 Serg. & Rawle, 111; Rose v. Munie, May T., 1854.

*Robinson & Beatty* for Respondent.

1. The Mexican grant was a complete title, and upon that alone he could maintain his action of ejectment. See decision U. S. Supreme Court in the Fremont case.

2. If it was not evidence of title, Sheldon took possession under a paper purporting to do one of two things—either to give him a title in fee to the land, or to give him an equitable claim on the land, with the right of immediate possession to be continued in him, until the equity should ripen into a legal estate, he in the meantime being required to do certain acts.

That he took the grant, *bona fide*, from those having authority to make such grants, is not questioned.

If the fee was granted there is an end to the case; if not, how much better off are the appellants? It is admitted that the possession alone

would entitle respondent to recover, but the point is raised that his possession only extends to what land is actually enclosed.

We cite the following authorities, to show that possession, taken under a paper title, (and it can certainly make no difference whether that title be equitable or legal) extends to the boundary described in the paper, provided there be no adverse possession, and the title be taken in *good faith*, the grantee believing he is getting a *good title*, or a *good right of possession*. Elliott *v.* Pearl, 10 Peters, pp. 443–4, and the cases there cited, or referred to in page 444.

We refer, also, to the dissenting opinion, and the authorities, in the case of Sunol *et al. v.* Hepburn *et al.*, 1 Cal. Rep., to show that even a void deed, if taken in good faith, gives possession to the extent of the boundaries.

Counsel also contend for a distinction, founded on some New York cases, which we think never were law or common sense, that paper title carries with it possession, only to the extent of a usual or ordinary sized farm.

These decisions have been overruled by later cases in New York, and never were recognized as law in any of the States, in which the most extensive litigation as to lands has been had.

But if it were law, how could it be applied so as to help the gentleman in this case? When the grant was made, this was not a farming, but a grazing county. This is a matter of public history, which the Court is always presumed to know, and which need not be proved. For the purposes for which land was then acquired, this was far below the average size of ranches.

The second instruction asked for by the appellants, and refused by the Court, we think was properly refused, for these reasons.

The instruction sets out by stating principles of law, which would be correct, if applied to one who had a mere naked possession, without any claim of legal title.

But we think one who enters on land under claim of *legal title*, with what purports to be a good *legal* conveyance, cannot be presumed to have abandoned the same, in less than five years, at which time he would be barred by the Statute of Limitations.

If a man by one or two years abandonment, can pass a title to land, what becomes of the Statute of Frauds?

All estoppels go on the ground of fraudulent or culpable silence, as in cases where silence is from the circumstances presumed to have been for a fraudulent object.

The facts of fraud, negligence, or culpability, are not left to the jury under the instruction asked. The Court is asked to construe acts, which are not by any means conclusive of culpability, into absolute fraud, or such gross neglect, as to visit on the party all the consequences of fraud.

BY THE COURT—Mr. Chief Justice MURRAY:

This was an action of ejectment, brought to recover two tracts of land situated in Sacramento county. On the trial, the plaintiff intro-

Gunn v. Bates.

duced in evidence a grant from Manuel Micheltorena, Governor of California, to Sheldon, and also proved an occupation of a portion of the land described in said grant, though not of the premises in controversy. The grant is in the usual form, and there is no dispute as to its authenticity. To its introduction the defendants object: First, that it was conditional; that it was not shown that the conditions had been complied with, and that it was not evidence of title. Second, that at best, it conveyed but an inchoate title, insufficient to maintain an action of ejectment, and inadmissible to qualify the plaintiff's actual possession. Several other errors have been assigned, which we will notice in their order.

In Leese and Vallejo v. Clark, 3 Cal. R., I had occasion to examine the character of these grants, and it was there decided, that a mere concession of land by the Departmental Governor of California, did not convey an absolute title in fee simple; that to entitle the grantee to an indefeasible title, it was necessary that all the requirements and conditions of his grant should be complied with. Regarding the grant in that case as incomplete, and conveying but an inchoate title, we held that it was insufficient to sustain an action of ejectment, which counts on legal title alone. In passing, it may not be improper to remark, that one of the strongest arguments urged against that decision, was the fact that these titles conveyed a species of property, which the United States had guarantied by treaty to protect, and that the local tribunals were bound to respect such rights. The obvious answer to this proposition I conceive to be, that this Court had no legislative functions. It was bound to administer rights according to the remedies provided by the Legislature; that it would have been competent and highly proper for that body to have provided for this class of cases, but having failed to do so, and left the parties to the old action of ejectment, we were bound by the rules governing that action.

In arriving at this conclusion, I felt that I was fully warranted by the previous decisions of the Supreme Court of the United States, in somewhat similar cases, arising from grants of land in Florida and Louisiana. I have never had reason to doubt its correctness, notwithstanding the decision of the Supreme Court of the United States in the case of Ritchie v. the United States, and the United States v. Fremont, 17 Howard.

At the risk of exposing myself to the ridicule or censure of many, for what may be considered temerity on my part in questioning the soundness of these decisions, I cannot refrain from the opinion that in these cases the Supreme Court have taken a new departure, and entirely disregarded their previous decisions. It is, however, a matter of congratulation to myself to know that this wholesale abandonment of principles, so long and satisfactorily settled, was not unanimous, and that one of the Judges on that Bench, better acquainted, probably, than any of his associates with this class of cases, and who has almost given shape to the law of this subject, together with another Judge, second to none in point of ability upon that or any other Bench in the

18

United States, both dissented from the opinions in the case of Fremont, and for reasons substantially the same as those which influenced the decisions of this Court.

It is not my purpose to re-examine this question at any length, as I do not now consider it open to discussion. I shall simply advert to a few cases which governed me in arriving at my former opinion, and leave the matter to rest as the Supreme Court of the United States have determined it. The policy of Mexico, like that of Spain, was to secure immigration by liberal donations of land to actual settlers. To this end, these grants were made upon certain conditions, and although they were for the most part gratuitous, yet the performance of the condition was always considered as necessary as the payment of money ; having, in fact, been substituted in preference to any other payment, in pursuance of the settled policy of the government, it is but fair to presume that they were expected to be scrupulously fulfilled.

In such cases it can hardly be supposed that the Government would part with the fee, until the sole consideration of the grant had been complied with. In fact, no doubt was ever entertained as to the necessity of a compliance with such conditions, until the doctrine was, for the first time, broadly asserted and boldly maintained, that a mere concession, bearing on its face the conditions on which the title should become definitely valid, providing for the approval of the Departmental Assembly, and issued in conformity with a law declaring in what event the grant should become void and the land subject to denouncement, operated a grant in fee simple *in presenti*, and that, too, where the land had never been surveyed, occupied, or in any way segregated from the public domain. The necessity of a performance of these conditions, as well as of definitive boundaries by which the land granted could be located and surveyed, has been rigidly maintained by the Supreme Court of the United States in its previous decisions. U. S. *v.* Kingsley, 12 Peters; U. S. *v.* Wiggings, 14 Peters ; U. S. *v.* Boisdon, 11 Howard. Authorities might be cited without number to these propositions, but I deem it unnecessary to adduce any others, except the dissenting opinions of Judges Catron and Campbell in the case of Fremont *v.* the United States, in which Judge Catron uses this language : " At law this claim has no standing, it cannot be set up in an ordinary judicial tribunal. It addresses itself to us, founded on an equity, incident to it by mere force of the contract, no part of which was ever performed. The claim is as destitute of merit as it can be, and has no equity in it, nor is it distinguishable from that of Clamorgan, which was pronounced invalid in the case of Glener *et al. v.* the United States.

" If this claim is maintained, all others must likewise be, if the first step of making the concession is proved to have been performed by the acting Governor, as no balder case than the one before us can exist in California, where the grant is not infected with fraud or forgery."

It is contended, however, that this decision is not binding on this Court, inasmuch as it has already been held by us in the case of Gordon

Gunn v. Bates.

*v.* Johnson, that no appeal lies from the decisions of the Courts of this State to the Supreme Court of the United States, and by following the opinion of the Supreme Court of the United States in this case, (which is acknowledged to be in contravention with our own,) we indirectly do that which we have refused to sanction or permit directly.

This argument arises from an imperfect understanding of the doctrine established in Gordon *v.* Johnson, which was, that no cause could be transferred from a State Court to any Court of the United States, and that neither a writ of error, nor an appeal would lie, to take a case from a State Court to the Supreme Court of the United States. It was not held, that we would not follow the decisions of the Federal Courts, in matters appertaining exclusively to their own jurisdiction.

To illustrate the difference between that case and this, it is necessary to state, that by the treaty with Mexico, all the public lands passed to the United States, reserving to the inhabitants of this State their rights of property, before that time existing by the laws of the ceded territory. There was at the date of the treaty, as it was supposed, from all the analogies existing between the mode of granting lands in California, and in Florida and Louisiana, at least two kinds of titles, one perfect, and the other incomplete. The owner of the perfect title was fully protected, both by the laws of Mexico, and the laws and usages of nations; and his title was not, neither could be, divested by the treaty or any subsequent Act of Congress. Inchoate titles were such as rested upon the first incipient steps for confirmation, where the fee of the land had never parted from the government, and depended for their completion upon some political act of the authority granting. In these cases, the authority of the Mexican Government to ratify and confirm, was passed to the Government of the United States, subject to the equities of the claimants, which she may disregard, but is bound in good faith to maintain. Conceding then, for the present, that all the lands in California, except perfect titles made before the acquisition, passed to the United States, and that this State has no interest or title to the public domain, (a question which is not raised in this case, and on which we express no opinion,) it follows, that whenever a title to land is drawn in question, it must rest for its foundation either upon a Mexican grant, a patent from the United States, or from this State in some few excepted cases.

If a party seeks to maintain his action on a Mexican grant, an outstanding title may be set up in the United States; but how are we to determine whether the United States have such a title as would defeat the recovery? Surely, the adjudication of her own tribunals, which have been appointed to determine these questions between her and the claimants, when adverse to her interest, and the rule of construction adopted by her in relinquishing her rights, may be looked to in ascertaining the rights of the only remaining party claiming through title.

The land either belonged to the United States, or to the claimant under the Mexican grant. If the Federal Government accedes to the right of the grantee, not on the ground of a confirmation of prior equitable in-

terest, but on the ground that he held a perfect title, who shall gainsay it? Certainly, not a mere intruder. It would appear strange at least, where the Federal Government had established a tribunal, with authority to decide these questions, that the Courts of this State should be found arrayed against those decisions, questioning the rule by which she voluntarily abandoned her claim of title, and asserting for her, rights which she had already disclaimed through the solemn adjudication of her Courts. There can be no subserviency of opinion, in this Court yielding to a decision made between the United States, (to her prejudice,) and one of her own subjects, when they alone are interested, and the interference of the judiciary of California, under such circumstances, would be Quixotic in the extreme.

Again, admitting the grant in question does not convey a perfect legal title, but only an equitable one, still it was admissible to establish the extent of the plaintiff's claim. In case of an entry on land under color of title by deed, the possession is deemed to extend to the bounds of that deed, although the actual settlements and improvements are only on a small part of the tract. In such cases where there is no adverse possession the law construes the entry to be co-extensive with the grant of the party, on the ground that it is his clear intention to assert such possession. Ellicot *v.* Pearl, 10 Peters, 412.

This doctrine has never, within our knowledge been doubted in this Court. In the case of Sunol *v.* Hepburn, 1 Cal., the opinion of the Court turned upon the point, that the deed through which the plaintiff claimed, was void, and therefore could not qualify the possession. In Plume *v.* Seward, 4 Cal., the plaintiff relied upon his actual possession, and did not attempt to extend it by paper title.

The Court properly refused the instructions asked by the defendant. The law does not require that the whole tract should be enclosed; it is sufficient if the grant under which the plaintiff entered, calls for distinct boundaries, neither should the plaintiff's recovery be limited to the size of a usual farm; there is no principle we know of which should thus alter the rule we have laid down; besides, at the time of the execution of this grant the land was designed for grazing and not agricultural purposes, and the grant was less than the usual size of concessions for such purposes. The second instruction assumes, that "the plaintiff standing by and permitting the defendant to settle upon the land, is a circumstance tending to establish an abandonment, and he will be estopped from asserting his possession against the defendant."

This instruction is not sound in law, nor warranted by the facts of the case. Estoppels in such cases proceed on the ground of fraud or culpable silence, which are facts for the jury and not matters of legal construction for the Courts.

The instructions, substituted by the Court below, were correct, and put the case properly before the jury.

The objection that the Court admitted hearsay evidence on the part of the witness, Norris, of the boundaries of the grant, is not maintained by the record; he simply swears to the boundary recognized by Shel-

don and himself, he being an adjoining proprietor. The objection to Sutter's testimony concerning the delivery of juridical possession was not well taken. He testified that he put the party in possession by virtue of his military authority, which at that time was omnipotent, and that he never made any record of it. This requisition might have been dispensed with by the general customs of the country, and it is not important, treating the title as merely inchoate, or perfect, under the decisions of the Supreme Court of the United States.

Judgment affirmed.

Mr. Justice TERRY.—I concur in the judgment of affirmance in this cause, but not entirely in the opinion of the Chief Justice. I do not think the plaintiff's title sufficient to sustain an action of ejectment. In my opinion, however, he is clearly entitled to recover upon his continuous possession under color of title.

The grant introduced, and the delivery of possession under it, vested in the plaintiff the right to the exclusive occupancy of the lands embraced within the boundaries of his tract; and it was properly admitted in evidence to show the extent of his possession, and the *animus* with which he entered.