ALEXANDER R. WALSH, Respondent, v. GEORGE A. HILL, JENNING T. SHELBY, L. M. BURSON, A. E. FRASER, Appellants.

CONFLICTING CALLS IN A DEED.—Where there are conflicting calls in a deed, those which from their nature are *less* liable to mistake will control those which are *more* liable to mistake.

IDEM.—If the starting call is fixed, certain and notorious, and there is a conflict between it and other calls, the latter must, generally, give way to the

former. But when the succceding calls are as readily ascertained, and are as little liable to mistake, they are of equal dignity with the first; and when they all conflict with the first, and agree with each other, their united testimony must control.

CONSTRUCTION OF WRITTEN INSTRUMENTS.—In construing written instruments, the only rule of much value—one which is frequently shadowed forth, but seldom, if ever, expressly stated in the books—is to place ourselves as near as possible in the seats which were occupied by the parties at the time the instrument was executed; then, taking it by its four corners, read it.

POSSESSION OF LAND UNDER A DEED.—A party who enters into the actual possession of a portion of a tract of land, claiming the whole under a deed in which the entire tract is described by metes and bounds, is not limited in his possession to his actual enclosure or possession, but acquires constructive possession to the entire tract, if it is not in the adverse possession of any other person at the time of his entry; and such person, in an action to recover possession of the land, will prevail against one who enters subsequently upon the unenclosed part as a mere intruder, or showing color of title only.

IDEM.—The fact that the grantor in the deed had neither title nor actual possession puts the case within, instead of without, the rule. It is the want of title and actual possession in the grantor that renders the rule necessary to the grantee.

IDEM.—Neither title nor actual possession in the grantor need be shown by the grantee in order to recover against a mere intruder, or one who enters with color of title only. All that he need do is to show an *entry under his deed* into the actual possession of a part, claiming the whole; and by an entry *under his deed*, we mean such an entry as would set on foot an adverse possession against the true title under the Statute of Limitations; that is to say, he must show an entry "under claim of title, exclusive of any other right founding such claim upon his deed."

IDEM—DEED OBTAINED IN LACK OF GOOD FAITH, OR FOR A SHAM PURPOSE.—If a person, in lack of good faith, intentionally takes a deed from a stranger having no title, and asserting no claim, for the sham purpose of adding a constructive possession of a larger tract to an actual possession of a smaller tract, he could obtain no advantage under this rule. In no just sense could he be considered as *entering* under claim of title *founded upon his deed.*

POSSESSION ACQUIRED UNDER A DEED BY ENTRY OF A TENANT.—If possession is acquired of a part of a tract of land by the entry of a tenant within and upon *certain described limits,* it gives to the landlord possession only to the extent of the described limits; but if the lease contains no definite boundaries, the possession of the tenant gives to the landlord a possession co-extensive with the boundaries of the whole tract.

APPEAL from the District Court of the Third District, Alameda County.

The facts are stated in the opinion.

*Walter Van Dyke,* for Appellants, submitted the following points and authorities:

Definite descriptions cannot be rejected. (*Loomis* v. *Jackson,* 19 John. 449; *Wendell* v. *The People,* 8 Wend. 189.)

Where there is a known ascertained place of beginning that must govern, and the grant must be confined within the boundaries, definite boundaries cannot be rejected on the ground that the grantor did not own part of the land embraced, but did own contiguous land. (*Jackson* v. *Wilkinson*, 17 John. 147–157.)

Where some of the calls must be rejected, the starting call controls. (8 Wend. 189 ; *Piercy* v. *Crandall*, 34 Cal. 334–344.)

And parol testimony cannot be allowed to alter the deed, although it may be received to explain discrepancies. If there has been a mistake in drawing the deed, the remedy is by an action to reform it, but not in ejectment. (*Pratt* v. *Woodward*, 32 Cal. 129–130.)

This deed also says, that the land intended to be conveyed is a part of the same conveyed by Roberts and Lange, by deed dated June 3d, 1851, to the grantor, Crowell. The description in that deed is therefore to be considered in connection with the description in this. (*Hicks* v. *Coleman*, 25 Cal. 122 ; *Vance* v. *Force*, 24 Cal. 436 ; *Caldwell* v. *Center*, 30 Cal. 542.)

Possession of a tenant is not notice of a landlord's title. (*Havens* v. *Dale*, 12 Cal. 367–368 ; *Smith* v. *Dale*, 13 Cal. 510.)

*J. McM. Shafter*, for Respondent.

As to the proposition that the possession of a tenant (of the tannery) was not *notice* of the title of the lessees, we say, *notice* is only necessary in case of *subsequent bona fide purchasers*, and the cases cited from the 13th and 18th Cal. Reps. are illustrations—a matter quite foreign to the present question. But the law in the case supposed is not as stated. The tenant's possession *is* notice of lessor's title. *Landers* v. *Bolton* (26 Cal. 419); *Dutton* v. *Warschauer* (21 Cal. 628), overrule, in that respect, a former decision.

The case in the 18th Cal. Reps. was put upon the ground of bad faith, in not recording a deed of a large tract, such deed having been followed by the possession of a small par-

cel only, and a subsequent *bona fide* purchaser for value, under a recorded mortgage, was preferred.

The simple question was, whether this alleged constructive possession under an *unrecorded* deed, was notice of title operative against a subsequent *bona fide* purchaser, and it was held it was not. In the case at bar, the lands were entirely unoccupied when they were enclosed by the fence of 1854, and when a portion was leased for a tannery. In short, in this case, the point argued does not arise, and the law is the other way. As to the different kinds of possession, and the different results ·flowing from them, *Davis* v. *Perley* (30 Cal. 639), leaves nothing more to be said. The findings of fact, in short, are fully justified by the testimony, and the first conclusion of law, if correct, controls the case. That conclusion of law is supported by *Hicks* v. *Coleman* (25 Cal. 122); *Davis* v. *Perley* (30 Cal. 630); *McKee* v. *Greene* (31 Cal. 418); *Ayres* v. *Bensley*, (32 Cal. 620.)

SANDERSON, J., delivered the opinion of the Court:

*First*—The first point involves the construction of the deed from Crowell to the plaintiff's grantors, Bensley, Mason and Himrod. The question is, whether the land in controversy is included in the calls of the deed.

The land is a part of the *Potrero Nueva*, in the City of San Francisco. It is situated on the sidehill to the south of Mission bay, and is bounded on the north by marsh lands and mud flats which border Mission bay on the south—the north line being the line dividing the marsh from the high land, or the line of ordinary high water; on the east by land belonging to one Piercy, the east line being about one hundred and forty rods in length, extending up the hill to a "cross-ditch," which cross-ditch is about ten rods long, and constitutes the south line; the west line extends from the west end of this cross-ditch down the hill, to the edge of the marsh, at the mouth of a small creek which empties into Mission bay.

At the time the Crowell deed was executed, there was a ditch running down into the marsh some distance, and a

smaller ditch, or furrow, as it is called by some of the witnesses, extending up the hill, along the east line, to the crossditch. The west line was marked by a "skeleton" fence, consisting of three boards nailed to posts three by four. Upon the north line, or line of high water, there was no ditch, nor was there any fence extending into the marsh from the east bank, or mouth of the creek, which has been mentioned; and the north line was about forty-five rods long, and not ten only. From the north line across the marsh, the ordinary low water mark, was over two thousand feet.

In the Crowell deed to Bensley, Mason and Himrod, the land conveyed is described as follows : "Commencing at *low* water mark, in range with a ditch on the line of land occupied by John C. Piercy, running southerly along said ditch to its most southern extent, about one hundred and forty rods; thence westerly along said ditch ten rods, to a line of fence ; thence northerly along the line of said fence, to *low* water mark, in range with said fence and the east bank of a small creek, running into the bay; thence eastwardly along *low* water mark to the place of beginning, about forty-five rods. The above described premises is a portion of land known as the Potrero Nueva, bounded by the bay of San Francisco and Mission creek, said tract containing about twenty acres, more or less; the same being a portion of land conveyed to the said party of the first part, by deed, made by George Roberts and John Lange, bearing date June 3, 1851."

Comparing this description with the description given by the witnesses, as stated above, and it is apparent that if we take the starting call given in the deed, and trace the lines from that point, nearly all the land, if not quite, will be found to consist of marsh and mud flats lying below high water mark, or entirely to the north of the land in controversy. But it will be found, also, that the "most southern extent" of the ditch on the line of Piercy's land will not be reached; that no cross-ditch, ten rods in length, will be found for a southern boundary; that no fence will be found extending back to the bay from the west end of a cross-ditch; and no mouth of a small creek emptying into the bay for a northwest corner. So no surveyor searching for the land

would stop here. He would suspect a mistake as to the first call, and seeing a "small ditch or furrow" extending "southerly along the line of land belonging to Piercy," he would trace it to its "most southern extent," and look for the "cross-ditch," which is given by the deed as the "south line." From this south line he could trace the side, or east and west lines, back toward the bay; or he might take the "mouth of the creek," the last call, and run the lines back to the first call. (*Noyes* v. *Dyer*, 25 Maine, 468.) In either way, he could not fail to detect that the only mistake made in the calls was in the first, and that it ought to have been *high* instead of *low* water mark. Thus, it appearing that the remaining calls are sufficient to point out and identify the land, it follows that the Court below did not err in holding or finding that the land in controversy was covered by the deed. (*Moss* v. *Shear*, 30 Cal. 479; *Reamer* v. *Nesmith*, 34 Cal. 624.)

We do not question the rule upon which counsel relies, that where there are conflicting calls, those which, from their nature, are *less* liable to mistake, must control those which are *more* liable to mistake; or that if the starting call is fixed, certain and notorious, and there is a conflict between it and other calls, the latter must generally give way to the former; but the rule does not go the extent of declaring that *all* the other calls, although agreeing among themselves, shall be set aside solely because they do not agree with the first. As a general proposition, it is undoubtedly true that mistakes are less likely to occur in relation to the starting point than in respect to the succeeding calls; but this proposition, as we think this case shows, cannot be accepted as universally true. It undoubtedly applies with full force where the starting point is fixed, certain and notorious, as in the case of a well defined monument, and the succeeding calls are courses and distances, or even monuments which are conflicting or ill-defined; but where the succeeding calls are as readily ascertained, and are as little liable to mistake, we consider them of equal veracity with the first, and where they all conflict with the first and agree with each other, their united testimony must control. It is true that "low water

mark" on Mission bay is more permanent and lasting than a "small ditch or furrow"; but both being found upon the ground when looked for, the testimony of the latter is quite as reliable as that of the former. (*Piercy* v. *Crandall*, 34 Cal. 334.) In conclusion, upon this branch of the case we deem it proper to say, that in the construction of written instruments, we have never derived much aid from the technical rules of the books. The only rule of much value— one which is frequently shadowed forth, but seldom, if ever, expressly stated in the books—is to place ourselves as near as possible in the seats which were occupied by the parties at the time the instrument was executed; then, taking it by its four corners, read it.

*Second*—The Court below, as appears by its findings and conclusions, considered this case as belonging to a class of which *Gunn* v. *Bates* (6 Cal. 272), *Rose* v. *Davis* (11 *Id.* 133), *Baldwin* v. *Simpson* (12 *Id.* 560), *English* v. *Johnson* (17 *Id.* 107), *Attwood* v. *Fricot* (*Id.* 37), *Keane* v. *Cannovan* (21 *Id.* 299), *Kile* v. *Tubbs* (23 *Id.* 431), *Hicks* v. *Coleman* (25 *Id.* 122), *Hoag* v. *Pierce* (28 *Id.* 187), *Davis* v. *Perley* (30 *Id.* 630), *McKee* v. *Greene* (31 *Id.* 418), *Ayres* v. *Bensley* (32 *Id.* 620), are examples. The doctrine established in this State by those cases is, that a party who enters into actual possession of a portion of a tract of land, claiming the whole under a deed in which the entire tract is described by metes and bounds, is not limited in his possession to his actual enclosure or possession, but acquires constructive possession to the entire tract, if it is not in the adverse possession of any other person at the time of his entry; and that such person, in an action to recover possession of the land, will prevail against one who enters subsequently upon the unenclosed part as a mere intruder, or showing color of title only. This doctrine the learned counsel for the defendants seeks to bring again in question; but it has been repeatedly and fully considered, as appears by the cases to which we have referred, and it must now be considered as no longer open to debate.

It is further claimed, however, that this case does not fall within the rule. The grounds of this point are, First—That

Crowell had neither title nor actual possession at the time he sold to the plaintiff's grantors ; and, Second—That the plaintiff's grantors never entered, under the deed, into the actual possession of any part of the land, claiming the whole.

The fact that Crowell had neither title nor actual possession, puts the case within instead of without the rule. It is the want of title and actual possession in the grantor that renders the rule necessary to the grantee. If the grantor has title, there can be no question between his grantee and a subsequent intruder, either as to actual or constructive possession. And so, if he has actual possession, and his grantee succeeds to it, there can be no question between the latter and an intruder as to a constructive possession.

In *Baldwin* v. *Simpson* the land was public land, and the grantor had merely surveyed and marked the line by blazed trees ; he, therefore, had neither title nor actual possession. In *Keane* v. *Cannovan* there was no testimony offered with the deed to show that the grantor had title, or that he ever had possession of the premises, either actual or constructive; yet, this Court held the deed admissible to establish the extent and boundaries of the grantee's possession. In *Thomas* v. *Harrow* (4 Bibb. 563), the grantor only claimed the land under an entry, and there was no proof that the entry even covered the lands described in the deed.

The Statute of Limitations distinguishes between an entry made without any right, or claim of right, and one made under a claim or color of title. The naked disseizor is regarded with the greatest disfavor, and his possession is restricted to the land in his actual, exclusive possession ; but a disseizor under claim and color of title is allowed a possession co-extensive with his metes and bounds.

The rule which we are considering gives a plaintiff without title, in an action against a subsequent intruder without title, the same support which he would have under the Statute of Limitations in an action against himself by the true owner. If he came as a mere intruder, he can recover only to the limits of his actual possession —if with color of title, he is allowed to recover to the extent of his metes and bounds. The rule is as just and reasonable as the statute to which it

is cognate. There is nothing harsh or unreasonable in allowing the same facts and circumstances, which, if maintained for five years, would sever the title of the true owner, and vest a title in another, to shield that other during the five years, and forever after against the acts of a mere intruder without title, or with color of title only. If a party has an adverse possession as against the true owner, such possession should be available to him as a weapon of *offense* against a naked intruder to the same extent that it is available to him after the lapse of five years, as a weapon of *defense* against the true owner. So, as we hold, neither title nor actual possession in the grantor need be shown by the grantee in order to recover against a mere intruder, or one who enters with color of title only. All that he need do is to show an *entry under his deed* into the actual possession of a part, claiming the whole—and by an *entry under his deed* we mean such an entry as would set on foot an adverse possession against the true title, under the Statute of Limitations; that is to say, he must show an entry "under claim of title, exclusive of any other right, founding such claim upon *his deed.*"

If a person, in lack of good faith, intentionally takes a deed from a stranger having no title and asserting no claim, for the sham purpose of adding the constructive possession of a larger tract to an actual possession of a smaller tract, we have no hesitation in declaring that upon these facts appearing, he is not entitled to the benefit of the rule under consideration. In no just sense could he be considered *as entering* under claim of title *founded upon his deed.* There must be some show of good faith in taking the deed. (*Kile* v. *Tubbs, supra.*) To hold otherwise, would be to countenance a fraud upon the law.

There is no pretense for saying that the Crowell deed was taken for such a purpose. Crowell had a much larger tract adjoining this, which larger tract was bounded in part by the fence referred to in his deed as the western boundary of the tract in controversy, and, in the language of the Court below, he "took up the tract in suit in September, 1853, and claimed it as belonging to him. For the purpose of desig-

nating the boundary line between him and Piercy, he, by consent and acquiescence of Piercy, made a furrow or small ditch from the edge of the marsh to a point one hundred and forty rods south, at the end of which he made a cross-ditch ten rods west, until it connected with the fence which constituted the east line of his original claim, which fence extended from the cross-ditch northerly to the mouth of a small creek which empties into the bay." For the purpose of defining a possession, these acts and these lines were at least equal to the survey and blazed trees in *Baldwin* v. *Simpson.* With the land in this condition, the grantors of the plaintiff purchased and took a deed in December, 1853, both parties going upon the land at the time of sale. There can be no pretense for saying that an entry under a deed taken under these circumstances, would not satisfy the Statute of Limitations, and set on foot an adverse possession to the entire tract described in the deed, and, by parity of reason, enable the grantee in the deed to recover the entire tract as against a mere intruder without title, or with color of title only. We conclude this branch of the general topic by giving our assent to the suggestion of the learned counsel for the plaintiff, that the maxim *prior in tempore potior in jure* applies even to the conflicting pretenses of acknowledged trespassers.

The facts as to the alleged entry of the grantors of the plaintiff under the Crowell deed, as shown by the record, are that they were also the purchasers of an adjoining and much larger tract, called the "Farrington Claim," and that soon after their purchase they made an enclosure of both tracts, as one tract, by taking the bay and Mission creek as constituting a natural enclosure on the north, and building a fence on the other lines, except where fences had been already built. As to the character of this enclosure the testimony was somewhat conflicting, but the Court found that "Bensley, Mason and Himrod built a substantial post and board fence along the whole line of the furrow or ditch on the east to the cross-ditch on the south, until it connected with the line of fence which had been previously built, running from the point of intersection west and north to Mission creek;

and these last lines of fences and the Mission creek and bay of San Francisco, with the first, formed a general enclosure of the tract in controversy, and also other tracts to the west, all of which were claimed by Bensley, Mason and Himrod, and some by other parties adverse to them."

In August, 1861, Mason leased about half an acre in the northeast corner of the tract in controversy to one Garagnon, for one year, with the privilege of four. Garagnon immediately entered and enclosed the leased premises with a substantial fence, and erected thereon a tannery; and he, and grantees under him, have been since and still are in possession as tenants, but neither of them had anything whatever to do with the remainder of the tract. No one claiming under the Crowell deed has resided upon, or made improvements upon, or put the premises to any use, except as stated above.

So the only "entry into the actual possession of a part" of the premises, within the meaning of the rule under consideration, was the settlement of a tenant upon a part only, under a lease with *specific boundaries*. Does such an entry satisfy the rule? Had Garagnon taken a lease of the entire tract, or a lease without bounds, and entered into the actual possession by an enclosure of the tannery lot, claiming the whole under his lease, his entry and actual possession, with a claim to the whole, would have been the entry, actual possession and claim, or constructive possession, of his landlords. But a party entering under a lease, as under a deed, gains a possession only to the extent of the boundaries of his lease. In *Lee* v. *McDaniel* (1 A. K. Marshal, 234), a landlord settled a tenant on his patent with an intent to gain possession, giving his tenant *no limits or bounds*, and it was held that the landlord's possession, thereby obtained, extended to the lines of his patent. On the other hand, it was held in *Maury* v. *Waugh* (*Id.*, 452), that an alienee entering on his lands *with bounds*, gains a possession only to the extent of his bounds. In *Owings* v. *Gibson* (2 A. K. Marshall, 515), the whole question was directly considered, and it was held that a tenant taking possession of a part of a tract of land by *certain described limits*, gives to the landlord possession only

to the extent of the leased premises, but if the lease contains no definite boundaries, the possession of the tenant gives to the landlord a possession co-extensive with the boundaries of the whole tract. It was again declared in *Jones* v. *Chiles* (2 Dana, 25), that a landlord who settles a tenant *without boundaries* is in possession to the extent of his claim; but if he restricts the tenant by metes and bounds to a *part only* of the tract, his possession by his tenant will be restricted in like manner. To the same effect is the case of *Wickliffe* v. *Ensor* (9 B. Monroe, 253.) The proof of the rule lies in the fact that if the landlord himself enters and is ousted by an intruder, he may recover to the boundaries of his deed, while the tenant, if ousted, can recover only to the boundaries of his lease.

Our conclusion upon this branch of the case is, that the Court below erred in holding or finding a constructive possession in favor of the plaintiff to the land outside of the tannery enclosure.

It is claimed, however, by counsel for plaintiff, that in the event we should come to the conclusion just stated, the judgment of the Court below ought to be sustained upon the ground that the testimony and findings show a substantial enclosure, and, therefore, an *actual* possession sufficient to entitle the plaintiff to a recovery.

It is very apparent that the Court below did not consider the testimony as proving an *actual* possession. Had the testimony proved an *actual possession* there would have been no occasion to resort to a *constructive* possession—a less satisfactory ground—as the foundation of the judgment.

Judgment and order reversed and a new trial granted.

*Per* SPRAGUE, J. : I concur in the judgment.

CROCKETT, J., having been of counsel, did not participate in the decision.