## ELLIOTT v. JEFFERSON.

(Filed October 20, 1903.)

BOUNDARIES—*Deeds—Variance.*

> Where a survey of land is made in contemplation of a division by
> deed, the line marked on the survey does not control the calls
> in deeds subsequently made, in case of a variance, in the
> absence of fraud or mistake.

ACTION by J. D. Elliott against M. F. Jefferson, heard by
Judge *Fred. Moore* and a jury, at October Term, 1903, of
the Superior Court of BEAUFORT County. From a judgment
for the defendant the plaintiff appealed.

*W. B. Rodman,* for the plaintiff.
*Small & McLean* and *C. F. Warren,* for the defendant.

DOUGLAS, J. This is an action for the recovery of certain
logs and in its determination involves the title to the land
from which the logs were cut. There are many exceptions
both to the giving and refusal of instructions, but all that are
necessary for us to consider are substantially involved in
the question whether the line run and marked by Burbank
before the execution of the deeds in question should control
the boundaries of the land regardless of the calls in the deed.
As the jury found the issues as to title in favor of the defend-
ants, all question as to the measure of damages is practically
eliminated from the consideration of this case. Both par-
ties claim under J. S. and W. H. Lodge by deeds of equal
date, so the only question of boundary is as to the dividing
line between the two tracts.

The principal exception relied on by the plaintiff is to the
refusal of the Court to give the following instruction:

"If the jury, from the evidence, find that the two Lodges, who then owned the land, in 1875 employed the witness Burbank to run out these lands, which are afterwards conveyed unto the Morgans and Mrs. Corbin, and that in making this survey of these lands the witness Burbank ran from the gum to the pine and from the pine to the cypress stump under water, and that this line from the pine to the stump was blazed or marked, and that afterwards the deed to the Morgans was made, calling from the gum north 73 east, and from the pine 73½ east, and that the line called for in these deeds was the line which Burbank ran from the gum to the pine and from the pine to the stump under water, then these lines actually run and marked would be the true lines, whether the course given in the deed was the same course the compass now gives or not."

If this prayer referred to the purpose and intent of the grantors at the time the deeds were executed, we think it is sufficiently included in the instructions that were given. If it meant anything else it was properly refused.

The following instructions, among others, were given by the Court:

"The Court charges you that the burden is upon the plaintiff to satisfy you by a preponderance of the evidence that W. H. and John S. Lodge, for the purpose of making the division above mentioned, had the line claimed by plaintiff actually run and marked, and established such line as the dividing line between these two tracts of land; and further, that when the deeds to Mary Morgan and Martha Corbin were made, on March 15, 1876, after the survey of Burbank, it was the intention of said W. H. and John S. Lodge, in describing the lands conveyed in said deed, to convey the same as run and marked by said Burbank; and the plaintiff must satisfy you by a preponderance of the evidence that this line was actually run and marked as the division line between

the Morgan and Corbin land, and that when the deeds were made it was the purpose and intention of said John S. and W. H. Lodge to convey the land in accordance with this line, if you find that the same was run and marked as before explained." 　 * 　 * 　 * 　 * 　 * 　 * 　 *

"Now, if you should find from the evidence that it was the purpose of the parties to this deed at the time the same was made not to run from the pine to the stump, but that it was their purpose and intention to run from the pine the course and distance called for in the deed to the creek, then the line as described in this deed, allowing the proper variation, would be the true line of the defendant Jefferson." 　 * 　 * 　 *

"If you should find from the evidence that it was the purpose and intention of the parties to the deed to begin at the gum designated by Gay and run the course and distance given in the deed to Mary Morgan, then the line as described in said deed, allowing the proper variation, would be the true line of the Mary Morgan tract."

"If it was the purpose and intention of John S. and W. H. Lodge to make the line from the pine to the stump the division line between the Mary Morgan and Martha J. Corbin land, and the survey was made for that purpose, and the line actually run and marked, still they could abandon such purpose and intention and make the lines such as they inserted in the deeds, and if they did not so abandon their purpose the lines as inserted in their deeds would control."

We see no error in these instructions or in any material part of the charge.

The plaintiff says in his brief:

"We submit that these instructions as given by the Court were erroneous, in that they made the whole question of whether the marked line controlled in the deed turn on whether the course as given was given by mistake or not.

"We contend that there are two grounds upon which the marked line controls:

"1st. When the call is north or south and the line actually runs south or north, we submit that there is a question of mistake; that the draughtsman simply makes the mistake of reversing his call.

"2d. That there is another ground, and that is that where a surveyor goes out and actually runs a line and takes the course as given by his compass at the time, and records that course, and the line is marked by it, that the marked line controls. The course as given by his compass may be recorded by the draughtsman correctly, but the compass may have had some temporary aberration of the needle, causing it to read incorrectly.

"Now, this view of the law was entirely excluded by the charge as given by the Court, but it was made to depend upon the question of *intention and mistake,* and, we submit, under the authorities above cited, was erroneous."

His Honor was correct in charging that the jury should be governed in their verdict by what they might find to have been the purpose and intention of the grantors at the time of the execution of the deeds. If at that time they intended to adopt the line run and marked by Burbank, and thought that the calls in the deed followed that line, there was evidently a mistake in drawing the deed, as it failed to correctly set forth the intention of the grantors. If, however, they intended the line to follow the calls in the deed, regardless of any marked line, such calls must control the location of the line. Where the description in a deed is not inherently inconsistent it is the *prima facie* expression of the will of the grantor. It is different where, for instance, the courses and distances are incapable of practical location or are inconsistent with marked lines or other natural objects called for in the deed itself. This matter would have been much sim-

plified if the deeds in question had called for the Burbank line, which might easily have been done had the grantors so desired.

There is an exception to the following charge: "That if the two deeds to Mary Morgan and Martha Corbin were drawn without mistake on the part of the draughtsman, then the lines called for in these deeds would control and not the marked lines, if any exist." This paragraph, taken by itself, might be capable of misconstruction from the use of the word "draughtsman," but we think it is so qualified by the remainder of the charge as to clearly inform the jury that they must be governed by the intent of the grantors, whose language the deed is supposed to be, in the absence of evidence to the contrary.

We think the error of the plaintiff lies in a misapprehension of the application of the rule that in case of a discrepancy a marked line controls the calls in the deed as to courses and distances. This rule never applies unless the marked line is so connected with the deed, either by intrinsic or extrinsic evidence, as to create a presumption as to the intent of the grantor. The mere running and marking of a line can never convey the title to land, nor can it take the place of a deed. At best, it can only serve to locate the land conveyed in the deed, and can operate only in aid of the deed. Admitting that a line is run in contemplation of a deed, it does not bind the grantor, as a different contract may be made or the line subsequently changed. As no title can vest except by the execution of a deed, the vital question is the intent of the grantor at the time of such execution.

Perhaps the farthest this Court has gone in allowing marked lines to control a conveyance of land is in *Barker v. Railway,* 125 N. C., 596; 74 Am. St. Rep., 658. It was there held that where a grantor had executed a deed, defective in fact but admittedly intending to convey the land in ques-

tion, and, in furtherance of such intention, had had the land surveyed and had placed the defendant in possession thereof under known and visible boundaries, he was *estopped* from maintaining an action of ejectment against the defendant, who had ever since remained in open, continuous and adverse possession. That case turned upon the doctrine of estoppel, and not upon the theory that the marked lines and corners had given validity to the deed. If the defendant had not been in possession, and especially if the land had been in possession of an innocent purchaser, a different question would have been presented.

Wherever a marked line or other natural object is permitted to vary the description called for in the deed, it is always in presumed furtherance of the intent of the grantor in the execution of the deed. In other words, it is to carry out the true intent of the deed, and never in derogation thereof. This principle is clearly recognized in the authorities cited by the plaintiff himself, as will appear from the following extracts :

In *Cherry v. Slade,* 7 N. C., 82, which really went off on the point that the jury, instead of finding the facts, had only found the evidence, *Taylor, C. J.,* says, on page 90: "This rule is founded upon the same reasons with the preceding ones, the design of all being to ascertain the location originally made; and, calling for a well-known line of another tract, denotes the intention of the party with equal strength to calling for a natural boundary, so long as that line can be proved."

In *Reed v. Schenck,* 13 N. C., 415, the Court says, on page 417: "For many years we have in all cases, I believe, except one, adhered to the description contained in the deed, and it is much to be lamented that we do not altogether. The case to which I allude is where the deed describes the land by course and distance only, and old marks are found corresponding in age, as well as can be ascertained, with the date of the deed, and so nearly corresponding with the courses and dis-

tances that they may well be supposed to have been made for its boundaries, the marks shall be taken as the *termini* of the land. This is going as far as prudence permits; for what passes the land not included by the description in the deed but included by the marked *termini?* Not the deed; for the description contained in the deed does not comprehend it. It passes, therefore, either by parol or by a mere presumption. As far as we know, there has been no series of decisions by which the description in the deed is varied by marks, unless they were made for the *termini* of the land described in the deed, or supposed to be so made, and to which it was intended the deed should refer, or to which it was supposed the deed did refer, or rather supposed that the courses and distances corresponded with the marks, and that the same land was described, whether by course and distance in the deed or by the marked *termini.*"

In *Safret v. Hartman,* 50 N. C., 185, the Court says, on page 189: "His Honor charged 'that notwithstanding the black oak was not called for in the deed, yet if it was marked as a corner to the land conveyed at the time of the conveyance, the line should be extended to it, regardless of course and distance.' In this there is error. His Honor misconceived and misapplied the rule laid down in *Cherry v. Slade,* 7 N. C., 82, 'where it can be proved that there was a line actually run by the surveyor, which was marked and a corner made, the party claiming under the patent or deed shall hold accordingly, notwithstanding a mistaken description of the land in the patent or deed.' This rule presupposes that the patent or deed is made in pursuance of the survey, and that the line was marked and the corner that was made in making the survey was adopted and acted upon in making the patent or deed, and therefore permits such line and corner to control the patent or deed, although they are not called for and do not make a part of it. Parol evidence being let in for the pur-

pose of controlling the patent or deed by establishing a line and corner not called for, as a matter of course it is also let in for the purpose of showing that such line and corner were not adopted and acted on in making the patent or deed, because the rule presupposes this to be the fact."

In *Baxter v. Wilson,* 95 N. C., 138, the Court says, on page 143: "For instance, when there has been a practical location of the land, as when it can be proved that there was a line actually run and marked and a corner made, such a boundary will be upheld, notwithstanding a mistaken description in the deed. *Cherry v. Slade,* 7 N. C., 82. The construction has been adopted by our Court to carry out the intention of the parties when it is clearly made to appear, and, to effect that object, course and distance will be disregarded if the means of correcting the mistake be furnished by a more certain description in the same deed, and especially will it be so when some monument is erected contemporaneously with the execution of the deed."

The doctrine thus laid down is in full accord with the principles enunciated and the cases cited in *Bowen v. Gaylord,* 122 N. C., 816, and is sustained by the general current of authority here and elsewhere. In the construction of all deeds and grants there is one essential object to be kept in view, and that is to ascertain the true intent of the grantor and to give full effect to that intention when not contrary to law. All rules of construction adopted by the courts are simply means to a given end, being those methods of reasoning which experience has taught are best calculated to lead to that intention. Hence all authorities unite in saying that no rule can be invoked, no matter how correct in its general application, that tends to defeat the intention of the grantor. This doctrine is of such universal acceptance as to require but few citations, more to illustrate its extent than to prove its existence.

It is well expressed by *Chief Justice Shaw,* in *Salisbury v. Andrews,* 19 Pick. (Mass.), 250, 252, as follows: "In construing the words of such a grant, where the words are doubtful or ambiguous, several rules are applicable, all, however, designed to aid in ascertaining what was the intent of the parties, such intent, when ascertained, being the governing principle of construction."

In *Smith v. Parkhurst,* 3 Atk. Rep., 135, *Lord Chief Justice Willes* says: "Another maxim is that such a construction should be made of the words of a deed as is most agreeable to the intention of the grantor. The words are not the principal thing in a deed, but the intent and design of the grantor. We have no power, indeed, to alter the words or to insert words which are not in the deed, but we may and ought to construe the words in a manner the most agreeable to the meaning of the grantor, and may reject any words that are merely insensible. Those maxims, my Lords, are founded upon the greatest authority—*Coke, Plowden* and *Lord Chief Justice Hale;* and the law commands the *astutia*—the cunning—of judges in construing words in such a manner as shall best answer the intent. The art of construing words in such a manner as shall destroy the intent may show the ingenuity of, but is very ill becoming, a judge."

Devlin on Deeds, sec. 835, says: "But it is doubtful how far arbitrary rules can be of service where the only object is to determine the intention of the parties. In fact, the truth was well expressed by *Mr. Justice Sanderson (Walsh v. Hill,* 38 Cal., 481, 487), who said that 'in the construction of written instruments we have never derived much aid from the technical rules of the books. The only rule of much value is to place ourselves as near as possible in the seats which were occupied by the parties at the time the written instrument was executed, then taking it by its four corners, read it.' This is the main object of all constructions. When the inten-

tion of the parties can be ascertained nothing remains but to effectuate that intention."

The judgment of the Court below is

Affirmed.