423 P.2d 487

Mervin J. RUSSELL and Ada J. Russell, his wife, Plaintiffs and Respondents,

v.

GEYSER–MARION GOLD MINING COMPANY, a corporation, The Bothwell Corporation, a corporation et al., Defendants and Appellants.

No. 10577.

Supreme Court of Utah.

Feb. 3, 1967.

E. J. Skeen, Salt Lake City, for appellants.

E. L. Schoenhals, Salt Lake City, for respondents.

CALLISTER, Justice:

This case arises from a dispute over some grazing rights. The plaintiffs, Mervin J. Russell and his wife, brought suit to quiet title in some grazing rights against the defendants, Geyser-Marion Gold Mining Company and The Bothwell Corporation. The trial court held that the plaintiffs were entitled to the exclusive right to use the surface of each of the described mining claims for livestock grazing purposes, so long as such grazing was done in a manner not to interfere with any mining of the defendants. From that decision the defendants seek reversal based on insufficient evidence in the record to support the trial court's findings of fact and conclusions of law.

Samuel Jorgensen, Mary Jorgensen, George A. Jorgensen, and Rose Jorgensen were the record owners in fee simple of the 43 patented mining claims involved in this dispute. One group consists of 12 claims located in a mountainous area north of Mercur in Tooele County; the other group consists of 31 claims located a few miles southwest of Mercur. These claims are not fenced nor marked in any way. On May 8, 1934, the Jorgensens entered into a mutual agreement with Glenn R. Bothwell whereby Jorgensens agreed to convey their 43 mining claims in exchange for Bothwell's promise to cancel their obligations at the Trade State Bank. This written agreement also provided that the conveyance would be "Subject to grazing rights which are reserved by the Sellers."

On May 24, 1934, pursuant to the above agreement, the Jorgensens quitclaimed to Bothwell the mining claims referred to in the above agreement. This quitclaim, hereinafter called the "Jorgensen deed," also contained the following language:

The Grantee herein agrees that the Grantors shall have the right to use the surface of the ground for grazing purposes, the grazing to be done in such a manner as not to interfere with any mining that the Grantee elects to do. The Grantors agree to pay one-half of the general taxes assessed against the land, as long as it is not used for mining purposes.

Bothwell soon died and his estate was probated and all his rights under the "Jorgensen deed" were distributed to the legatees named in his estate. The legatees reconveyed all of the mining claims to The Bothwell Corporation. Thereafter on August 13, 1949, the Corporation conveyed all of its interest in the "Jorgensen deed" to defendant-appellant Geyser-Marion Gold Mining Company, who promptly recorded its rights on August 16, 1949.

Almost five years after the execution of the "Jorgensen deed" the Jorgensens conveyed to A. C. Nordell on February 11, 1939, the "grazing rights on the 43 mining claims" which allegedly were reserved by them under the "Jorgensen deed." Nordell grazed some livestock on the land and paid one-half of the general taxes during the years 1942, 1943, 1944. Then on June 2, 1945, Nordell transferred the grazing rights to Tony Castagno. Castagno grazed cattle on the property from 1945 until 1955 at which time he conveyed the grazing rights by warranty deed to Rose Castagno. On December 13, 1960, Rose Castagno transferred the grazing rights by warranty deed to Joseph Rothe. Finally on December 14, 1960, Rothe transferred by warranty deed to the plaintiffs, Mervin Russell and his wife. On March 23, 1964, the plaintiffs commenced suit to quiet title on their grazing rights.

The defendants allege numerous assignments of error. However, the fundamental question presented concerns the construction to be given the above-quoted provision in the "Jorgensen deed." The defendants contend the provision does not reserve any interest in grazing rights but creates a mere license which is only a personal right and as such would not be transferable. To support this the defendants rely upon three lines of reasoning. First, that the deed was ambiguous as to what interest was passed and therefore this court should apply the rule of construction that where deeds are ambiguous and capable of alternative constructions, that construction should be adopted which is more favorable to the grantee than to the grantor.[1] Second, they contend that Utah Code Ann. Sec. 57–1–3 (1953) applies to give the grantee in the "Jorgensen deed" a fee simple. That section states as follows:

A fee simple title is presumed to be intended to pass by a conveyance of real estate, unless it appears from the conveyance that a lesser estate was intended.

Third, they contend the trial court erred in interpreting the "Jorgensen deed" with the aid of the May 8, 1934 contract between Jorgensens and Bothwell.

■■■ The "Jorgensen deed" is somewhat ambiguous as to what interests were created, however this court is not bound to construe the deed in favor of the grantee every time a deed is found to be ambiguous. This rule of construction favoring grantees is one of the last rules of construction that should be applied and need not be resorted to so long as a satisfactory result can be reached by other more reliable rules.[2] Clearly such a rule of construction should be subordinate and yield

1. Wood v. Ashby, 122 Utah 580, 253 P.2d 351 (1952).

2. 23 Am.Jur.2d § 165.

to the paramount rule that the intent of the parties is to be given effect if it can be ascertained and if it does not contravene the clear meaning of the words of the grant.

■ Utah Code Ann. Sec. 57–1–3 (1953) does not operate to give the grantee under the "Jorgensen deed" a fee simple since it does appear "from the conveyance that a lesser estate was intended."

■■ Since the paramount rule in interpreting an ambiguous deed is to determine the intent of the parties, it was proper for the trial court to consider extrinsic evidence in interpreting the "Jorgensen deed." Such allowance finds support in Western Development Company v. Nell,[3] where this court stated:

> With such confusion in the authorities and because logic compels us to recognize as valid either interpretation, we hold that the deeds are ambiguous, thus allowing the consideration of extrinsic evidence as to the situation of the parties as the time of execution, the circumstances surrounding the transactions, and the intent of the parties.

This same policy has been enunciated in Clotworthy v. Clyde,[4] where this court stated:

> Where an instrument or instruments of title leave ambiguity or uncertainty

as to intent, the court may look to surrounding circumstances to determine it. Support is also found in Wood v. Ashby,[5] where this court stated:

> Where the provisions of a deed are doubtful the court may also look to the practical construction placed upon the instrument by the parties.

■ Applying the above principles to the facts in this case, we hold that the trial court had sufficient evidence to find that the parties to the "Jorgensen deed" intended to create a reservation of the grazing rights and not just a license to go on the land. To support our holding we refer to the May 8, 1934 written agreement between Jorgensens and Mr. Bothwell which clearly provided that the conveyance when made would be "Subject to grazing rights which are reserved by the Sellers." The only limitation upon the Jorgensens was not to interfere with the mining rights. There is nothing else in that deed which in any way limits the grazing rights or implies a lesser interest was intended. The intended use of the property by the parties to the "Jorgensen deed" is also helpful in interpreting the deed. The record shows that Jorgensens were cattle raisers and interested in using the land to graze cattle, while Bothwell was apparently only interested in the mining rights. The record shows that the plaintiffs and their predeces-

3. 4 Utah 2d 112, 288 P.2d 452 (1955).
4. 1 Utah 2d 251, 265 P.2d 420 (1954).

5. Supra, footnote 1.

sors in interest have been in continuous possession for almost 30 years without protest from the defendants or their predecessors in interest. It is also important to note that the plaintiffs and their predecessors in interest have recorded these grazing rights for 30 years without any move by the defendants to rectify the situation. Such evidence seems to support the notion that a transferable interest was recognized by both parties and their predecessors in interest.

The record further shows that The Bothwell Corporation, one of the defendants in this suit, has by its actions recognized a transferable interest in the "Jorgensen deed." During the time Nordell had acquired the grazing rights from Jorgensens he paid taxes as stipulated in the deed. During the years 1942, 1943, 1944 The Bothwell Corporation, then the owner of the mining rights, accepted those payments without any questions. Certainly The Bothwell Corporation in accepting these taxes was recognizing an interest under the "Jorgensen deed" which had been transferred to Nordell.

For the foregoing reasons we hold that there is ample evidence in the record to support the findings and judgment of the trial court.

Affirmed. Costs to plaintiff.

CROCKETT, C. J., HENRIOD, J., and LEONARD ELTON, District Judge, concur.

TUCKETT, J., being disqualified did not participate herein.

McDONOUGH, J., heard the arguments but died before the opinion was filed.