Floid C. HARTMAN and Ruth A. Hartman, Plaintiffs and Appellants,

v.

Ora Ann POTTER, William M. Hartman, Jr., Husky Oil Company, and Chevron Oil Company, Defendants and Respondents.

No. 16004.

Supreme Court of Utah.

June 1, 1979.

Kenneth M. Hisatake, Salt Lake City, for plaintiffs and appellants.

Robert G. Pruitt, Jr., Salt Lake City, for Potter.

Clark R. Nielsen, Salt Lake City, for Husky-Chevron.

HALL, Justice:

Plaintiffs sought to quiet title to a one-quarter interest in the oil, gas, and mineral rights in a 160-acre parcel of land in Duchesne County, Utah. They appeal from the denial of their motion for summary judgment and from a summary judgment quieting title to one-half of said mineral rights in favor of defendant, Ora Ann Potter.

William and Rose Potter were the predecessors in interest of defendant Ora Ann Potter and they held the fee interest in the 160-acre parcel, including all of the mineral rights, until 1946 when they conveyed, by mineral deed, one-half of the mineral rights to one Bennett. In 1951, the Potters sold the fee interest to plaintiffs. The warranty deed of conveyance contained the following:

There is reserved unto the Grantors three-fourths (¾) of all the oil, gas, and

mineral rights to the above land belonging, with the right of ingress and egress thereon for the purpose of finding and producing oil, gas, and minerals thereon. This deed is given subject to a prior lease of all the oil, gas, and mineral rights to said land belonging.

Plaintiffs were aware of the conveyance to Bennett, and a title opinion furnished to them at the time of their purchase of the fee reflected Potters as owners of only one-half of the mineral rights.

In 1967, plaintiffs leased one-quarter of the oil and gas rights to defendant, Chevron Oil Company. In 1970, William Potter, Jr., the then successor in interest of the Potters, leased one-half of the oil and gas rights to Altex Oil Company.[1] In 1973, defendant, Husky Oil Company, succeeded to and presently retains the leasehold interest of both Altex and Chevron Oil Companies.

Plaintiffs did not seek reformation of the deed nor did they claim breach of warranty of title.[2] They made no assertion of ambiguity in the deed and simply urged the trial court, as did the defendants, to look to the intent of the parties and construe the deed as a matter of law. The court agreed to do so and, consequently, no evidence was presented.

Plaintiffs contended that the deed should be interpreted so as to afford them a one-quarter interest in the whole of the mineral rights. They suggested that such could be done in one of two ways: (1) by assuming that Potters did not recognize the prior conveyance of a one-half interest to Bennett and that they therefore intended to convey one-quarter of the whole to plaintiffs and to reserve three-fourths thereof to themselves, or (2) by assuming that Potters did recognize the prior conveyance to Bennett and that they intended to "protect" said conveyance, to reserve a one-quarter interest in themselves, and to convey a one-quarter interest to plaintiffs.

Plaintiffs acknowledged that the deed was susceptible of a third interpretation, viz., that Potters recognized the prior conveyance of a one-half interest to Bennett and that they intended to reserve three-fourths of their remaining one-half interest (amounting to three-eighths of the whole) and to convey to plaintiffs a one-eighth interest. However, they discounted this interpretation, deeming it to be the least logical.[3]

In also urging the trial court to construe the deed as a matter of law, the defendants contended that the Potters were confused as to the quantity of the mineral rights remaining after the conveyance to Bennett and, although intending to reserve all of their remaining one-half interest, they instead "over-reserved" a three-fourths interest of the whole.

Defendants further contended that the "over-reserve" had only the effect of reserving what the Potters actually owned (a one-half interest) likening it to the situation where one attempts to convey more realty than he owns. The effect of such an over-conveyance is governed by statute which provides that only that which the grantor can lawfully transfer passes to the grantee.[4]

The trial court apparently adopted defendant's argument, and by its Memorandum Decision ruled in pertinent part as follows:

It is the Court's interpretation of the June 27, 1951 deed, that since at the time thereof one-half of the oil, gas and mineral interests had already been conveyed away, that the reservation of defendant Potter's predecessors in interest of three quarters of said mineral interests acted to

1. At this point it is apparent that the parties were dealing with a one-quarter more mineral interest than existed, i. e., one-half in Bennett; one-quarter in Chevron; and one-half in Altex.

2. Apparently because of the operation of the Statute of Limitation and the so-called "Dead Man" statute. See U.C.A., 1953, 78–12–23 and 78–24–2, respectively.

3. The fact that such an interpretation would afford plaintiffs with only a one-eighth interest rather than the one-quarter interest they were seeking to quiet title to may well have influenced their logic.

4. U.C.A., 1953, 57–1–4. But see U.C.A., 1953, 57–1–10 which provides for the passage of after-acquired title.

reserve to the grantors the balance of all that remained, with the net effect of said deed being that the grantees (plaintiffs herein) received no mineral interest by way of said deed.

The difficulty with the argument presented by both plaintiffs and defendants is its inconsistency. Each invited the court to rule as a matter of law, yet they also invited the court to look to *factual* matters and to *assume* certain facts pertaining to the intent of the grantor.

This Court has long recognized the cardinal rule [5] of deed construction that the intention of the parties as drawn from the whole deed must govern.[6]

In the absence of ambiguity, the construction of deeds is a question of law for the court, and the main object in construing a deed is to ascertain the intention of the parties, especially that of the grantor,[7] *from the language used.* The description of the property in a deed is prima facie an expression of the intention of the grantor [8] and the term "intention," as applied to the construction of a deed, is to be distinguished from its usual connotation. When so applied, it is a *term of art* and signifies a meaning of the *writing.*[9]

Deeds are to be construed like other written instruments, and where a deed is plain and unambiguous, parol evidence is not admissible to vary its terms.[10] It is the court's duty to construe a deed as it is written, and in the final analysis, each instrument must be construed in the light of its own language and peculiar facts.[11] It is also well known that the intention of the parties to a conveyance is open to interpretation only when the words used are ambiguous.[12]

Where the issue involved is solely one of law, as in the instant case, this Court is capable of determining the question as was the trial court and we are not bound by its conclusions.[13]

The language used here reserving "three-fourths . . . of all . . . mineral rights to the above land belonging . . . subject to a prior lease of all . . mineral rights to said land belonging," is not ambiguous nor is it indicative of uncertainty as to the intent of the grantor. Hence, no resort may be had to subordinate rules of construction.[14]

Minerals in place may be severed from the land, and when so severed they become separate and distinct estates, held by separate and distinct titles.[15]

The general rules relating to the construction and operation of deeds and of reservations and exceptions therein ordinarily control the construction of grants or reservations of minerals or mining rights.[16]

A technical distinction exists between a "reservation" and an "exception." A reservation reserves to the grantor some *new thing issuing out of the thing granted* and not in esse before, and an exception *excludes* from the operation of the grant some *existing portion of the estate granted* which would otherwise pass under the general description of the deed. However, since the terms are often used interchangeably, the distinction has been disregarded to a great extent where the intention of the

**5.** See 26 C.J.S. Deeds §§ 82, 83.

**6.** *Haynes v. Hunt*, 96 Utah 348, 85 P.2d 861 (1939); *Russell v. Geyser-Marion Gold Mining Company*, 18 Utah 2d 363, 423 P.2d 487 (1967).

**7.** *Elliot v. Jefferson*, 133 N.C. 207, 45 S.E. 558 (1903).

**8.** Ibid.

**9.** 26 C.J.S. Deeds § 83.

**10.** *State Bank of Lehi v. Woolsey*, Utah, 565 P.2d 413 (1977).

**11.** Supra, footnote 6.

**12.** *Radke v. Union Pacific Railroad Company*, 138 Colo. 189, 334 P.2d 1077 (1959).

**13.** Article VIII, Section 9, Constitution of Utah. See *Brigham v. Moon Lake Electric Association*, 24 Utah 2d 292, 470 P.2d 393 (1970).

**14.** Supra, footnote 6, *Haynes v. Hunt.*

**15.** *Stephen Hays Estate, Inc. v. Togliatti et al.*, 85 Utah 137, 38 P.2d 1066 (1934).

**16.** See 58 C.J.S. Mines and Minerals § 155 and 26 C.J.S. Deeds § 137.

parties can be arrived at and a reservation may be construed as an exception when necessary to carry out the obvious intent of the parties.[17]

Consistent with the rule [18] that in order to be operative as such, an exception in a deed must be a *part of the thing granted*, and a reservation must *issue out of the thing granted*, this Court, in *Johnson v. Peck*,[19] adopted the following language of *Stone v. Stone* : [20]

> . . . A reservation is the creation in behalf of a grantor of a new right, that is, an easement issuing out of the thing granted, something which did not exist as an independent right before the grant. An exception is a clause in a deed which withdraws from its operation some part of the thing granted which would otherwise have passed to the grantor [sic] [21] under the general description.

A provision in a deed purporting to except or reserve in the grantor a right or interest in respect of real property which he does not own at the time of the conveyance [22] cannot be effective. Ownership is one of the conditions which must exist as the basis of a good exception or reservation.[23]

The grantor of an interest in land may of course except or reserve a fractional interest in mineral rights therein and, depending upon the particular language utilized in the exception or reservation, the mineral interest may be calculated on the mineral obtainable from the land or on the fractional interest of the grantor.[24]

In *Garraway v. Bryant*,[25] it was held that an owner of only a one-half interest in the minerals, (the other undivided one-half in-

terest having been reserved by his grantor), *conveys* his undivided half interest by a warranty deed which reserves a one-half undivided interest in the land without *mentioning the other outstanding, undivided one-half interest.*

Applying the foregoing concepts to the case at hand, we are precluded from assuming that the Potters (grantors) either did, or did not, recognize their prior conveyance of a one-half mineral interest to Bennett, or that they may have been confused as to their remaining interest. The undisputed fact is, that they did make such a conveyance and they are therefor chargeable with the knowledge thereof, as are the plaintiffs, not only by their own admission, but also by virtue of the recording [26] of the conveyance and the reference thereto in the title opinion furnished at the time of the transaction in question.

The conveyance to Bennett effectively severed one-half of the mineral interests from the land and such became a *separate and distinct estate* held by Bennett.

The language set forth in the recital, "reserved unto the Grantors three-fourths (¾) of all oil, gas, and mineral rights to the above land belonging," is clear and unequivocal. It did not create a new right in the Potters not previously existing. Hence it is technically not a "reservation." Rather, it withdrew from the operation of the deed a part of the thing granted which would otherwise have passed to plaintiffs. It is therefore, technically, an "exception."

Since Potters could not convey, except, or reserve more than they owned, and since the recital makes no reference to the already severed one-half mineral interest in

---

**17.** 58 C.J.S. Mines and Minerals § 153.

**18.** See 136 A.L.R. 644 for a discussion thereof.

**19.** 90 Utah 544, 63 P.2d 251 (1936); followed in: *Burton v. United States*, 29 Utah 2d 226, 507 P.2d 710 (1973) and *Aspen Acres Association v. Seven Associates, Inc.*, 29 Utah 2d 303, 508 P.2d 1179 (1973).

**20.** 141 Iowa 438, 119 N.W. 712 (1909).

**21.** Correctly quoted, it reads "grantee."

**22.** See footnote 18, supra, and cases cited therein.

**23.** *Powell v. Big Horn Low Line Ditch Co.*, 81 Mont. 430, 263 P. 692 (1928).

**24.** See 54 Am.Jur.2d, Mines and Minerals, Sec. 108. See also, 163 A.L.R. 1132.

**25.** 224 Miss. 459, 80 So.2d 59 (1955).

**26.** See U.C.A., 1953, 57–1–6 providing recording necessary to impart notice.

Bennett no longer "belonging" to the land, we can only conclude that Potters excepted three-fourths of *their* fractional one-half interest in the minerals. Consequently, the deed in question conveyed a one-eighth mineral interest to plaintiffs and "reserved" to Potters a three-eighths interest, all of which, added to Bennett's one-half interest, comprises the *whole* mineral interest concerned.

The summary judgment in favor of defendants is vacated and set aside and the case is remanded with directions to enter judgment in favor of plaintiffs and defendants consistent with this opinion.

Costs to plaintiffs.

MAUGHAN, WILKINS and STEWART, JJ., concur.

CROCKETT, C. J., concurs in result.