UNITED STATES of America,
Plaintiff-Appellee,

v.

Lloyd R. STUBBS, Defendant-Appellant.

No. 83–1211.

United States Court of Appeals,
Tenth Circuit.

Nov. 14, 1985.

John W. Call (Anthony M. Thurber on brief), Salt Lake City, Utah, for defendant-appellant.

Ellen J. Durkee, Atty., Dept. of Justice (Carol E. Dinkins, Asst. Atty. Gen., Washington, D.C., Brent D. Ward, U.S. Atty., Salt Lake City, Utah, Ralph H. Johnson, Asst. U.S. Atty., Salt Lake City, Utah, Dirk D. Snel and J. Carol Williams, Attys., Dept. of Justice, Washington, D.C., on brief), for plaintiff-appellee.

Before HOLLOWAY, Chief Judge, McWILLIAMS and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This appeal arises out of a dispute over title to an eighty-acre tract of land in a national forest in Utah.[1] This is the second time the dispute has been before us. In *Stubbs v. United States*, 620 F.2d 775 (10th Cir.1980), we denied relief to Lloyd R. Stubbs in his quiet title suit against the United States on the ground that it was barred by the twelve-year statute of limitations in 28 U.S.C. § 2409a(f). Thereafter, Stubbs apparently persisted in asserting rights to the property, and now the United States has sued him seeking to quiet its title to the tract.

On stipulated facts, the district court entered judgment in favor of the United States. Stubbs appealed. We affirm.

The district court in the instant case rejected defendant Stubbs' contention that a 1926 deed by which the land's owner, John R. Stubbs, and his wife conveyed title "to The Estate of Jesse G. Stubbs, deceased, Grantee," was void. It then found that Clifford Stubbs, to whom the real estate was distributed pursuant to the final settlement order in the Jesse Stubbs probate proceeding, had good title, which he conveyed when he sold the land to the United States in 1937. The district court treated the other issues raised—whether the United States had acquired title by its own adverse possession, the adverse possession of its predecessor in title, or a combination of both—as moot.

Defendant Stubbs claims to hold his title through a quitclaim deed signed by the heirs of John R. Stubbs, which he recorded in 1960. Most of the relevant stipulated facts are detailed in our earlier opinion, *see* 620 F.2d at 777–79, and will be repeated here only as necessary to our decision.

I

Stubbs bases his argument that the deed to the deceased Jesse Stubbs estate was void principally on dictum in *Nilson v. Hamilton*, 53 Utah 594, 174 P. 624 (1918). In that case patentees who had acquired land under the homestead act conveyed their land in 1876 to "James L. Hamilton, or the estate of James L. Hamilton, deceased." *Id.* at 624 (quoting the court's description, and not the deed itself). Ham-

1. The tract is legally described as the East half of the Northeast quarter, of Section 18, in Township Six South Range Three East of the Salt Lake Base and Meridian, in Utah County, State of Utah.

ilton had died in 1875. The court found that Hamilton had occupied the land during the period in which the patentees were seeking to perfect their homestead titles and had arranged to have the patentees convey the land to him once they acquired their patents. *See id.* at 625. The court found the deeds to be invalid because the arrangement was against public policy:

"The title granted by the homestead act gives to the patentee both the legal and equitable estate, and any prior arrangement made by him with any one concerning the title of any such premises is against the public policy of the government, is illegal, and not enforceable. It is immaterial whether the patentees, the parties to such agreement, are willing and ready to carry into effect such contract or agreements. The fact remains that it gives to the other party no legal or equitable right recognized by the courts, or which could or would be enforced. Neither did it give to the contracting party any enforceable right which he could transmit, by assignment or succession, to any one. In other words, Hamilton in this case had absolutely no right which he could enforce, or which he could transfer, and therefore had no devisable interest, and any one attempting to claim or take from him by purchase or inheritance would stand in no better position or relation than he himself, and would therefore acquire no right which the courts would recognize or enforce."

*Id.* at 625–26 (citation omitted).

Significant for our purposes here is what the court then said in dictum:

"We need not stop to discuss or declare that the attempted conveyances of 1876 to James L. Hamilton, who was then deceased, or to the estate of James L. Hamilton, deceased, did not convey any title to any one. There was no person in existence in law, named in the deed, authorized to receive, or who had the legal capacity to receive the title to the premises. It must therefore be concluded that these attempted conveyances of the several patentees in 1876 were mere nullities. 13 Cyc. 527; *Rixford v.*

*Zeigler et al.,* 150 Cal. 435, 88 Pac. 1092, 119 Am.St.Rep. 229; *McInerney v. Beck,* 10 Wash. 515, 39 Pac. 130; 1 Devlin, Deeds (3d Ed.) § 187. It necessarily follows, from the foregoing, that the deceased, James L. Hamilton, at the date of his death, had no devisable interest in the premises, and the appellants acquire no title or interest in the premises by reason of his will."

*Id.* at 626. Neither party has cited, and we have not been able to find, any other Utah case treating the validity of a deed to a deceased person or to a decedent's estate— although Utah State Bar Title Standard Rule 12 declares a deed to an estate of a deceased person a "nullity," citing the *Hamilton* dictum as its authority.

■ The ancient black letter law is that a deed to the estate of a deceased person is void for want of a grantee in being capable of taking the estate. *See, e.g., Simmons v. Spratt,* 1 So. 860, 862 (Fla.1887); *In re Reason's Estate,* 276 Mich. 376, 267 N.W. 863, 865 (1936); *Kenaston v. Lorig,* 81 Minn. 454, 84 N.W. 323, 323–24 (1900); 3 *American Law of Property* § 12.40, at 282 (Casner ed. 1952); 6 G. Thompson, *Commentaries on the Modern Law of Real Property* § 3005, at 340–343 (1962); 23 Am.Jur.2d § 29 (1983). Nevertheless, even the cases stating this rule often gave equitable rights to reformation. *See Life Insurance Co. v. Page,* 178 Miss. 287, 172 So. 873, 876 (1937) (implying court might uphold conveyance if the grantor's intended beneficiary had been sufficiently disclosed to constitute constructive notice of the deed's contents); 3 *American Law of Property* 282. And the trend in the more recent cases is to try to honor the intention of a grantor executing such a conveyance. *See Holder v. Elmwood Corp.,* 231 Ala. 411, 165 So. 235, 236–37 (1936) (considering deed to person's estate to be color of title); *Crouch v. Crouch,* 241 Ark. 447, 408 S.W.2d 495, 497 (1966) (deed to person's estate valid under some circumstances); *McCollum v. Loveless,* 187 Ga. 262, 200 S.E. 115, 117–18 (1939) (permitting reformation of deed to person's estate); *Fisher v. Standard Investment Co.,* 145 Neb. 80,

15 N.W.2d 355, 358–59 (1944) (deed to estate of a deceased person reformed to show executor of the estate as grantee); *Haile v. Holtzclaw,* 414 S.W.2d 916, 927 (Tex.1967) (deed to person's estate is valid); *see also Matthews v. Greer,* 260 S.W. 53, 54 (Mo. 1924) (deed to the heirs of a person is valid); *Wilson v. Dearing, Inc.,* 415 S.W.2d 475, 477–78 (Tex.Civ.App.1967) (deed to dead person construed in accord with grantor's intent); *Fidelity Securities Co. v. Martin,* 117 Wash. 323, 201 P. 301, 304 (1921) (deed to dead person construed in accord with grantor's intent); *City Bank v. Plank,* 141 Wis. 653, 124 N.W. 1000, 1001–02 (1910) (adopting "more rational" modern view that deed to dead person should be construed to follow parties' intent); *Black v. Beagle,* 59 Wyo. 268, 139 P.2d 439, 444 (1943) (deed to dead person conveys equitable title to person's heirs).

These cases ignore, if necessary, the conceptual problem that confounded the medieval conveyancers, who required an identifiable existing person to receive seisin at the time a deed was executed and title passed. The apparent willingness in these cases to honor substance over form is consistent with the practical realities of modern law. Today, a probate estate is a legal entity. It files tax returns; it operates businesses; and, acting through its administrator or executor, it commonly both conveys and receives real and personal property during the period of administration. These more liberal cases comport with the legal trend that permits former nonentities such as partnerships to hold title to land in the partnership name. *See* Utah Code Ann. § 48–1–5 (following general Uniform Partnership Act rule).

Recent Utah Supreme Court decisions endorse the principle that a court should construe an ambiguous deed in a way that gives effect to the parties' intentions. *See Chournos v. D'Agnillo,* 642 P.2d 710, 712 (Utah 1982); *Russell v. Geyser-Marion Gold Mining Co.,* 18 Utah 2d 363, 423 P.2d 487, 490 (1967). In the instant case it is clear that the grantor knew of the death and intended the property to pass to the decedent's estate. The grantee was the "Estate of Jessie G. Stubbs, deceased";

Jessie G. Stubbs was the grantor's son who had died about six weeks before the execution of the deed. A probate proceeding in Jesse Stubbs' estate already had been opened, and an administrator had been appointed before the deed was executed. The deed was recorded at the request of the administrator and at the estate's expense. The purpose of the conveyance presumably was to cause the property to pass with the other assets in the son's estate in the same manner as if it had been owned by the son immediately before the son's death. The district court considered it significant in this regard that the son's beneficiaries "were clearly known and undisputed" at the time the grantor executed the deed.

Further, *Nilson v. Hamilton, supra,* the source of the dictum Stubbs relies on, is distinguishable. There the grantor conveyed to a named person *or* his estate, apparently not knowing whether that grantee was living or dead. We are not certain how Utah courts would or should rule if a deed were made to a decedent's estate under circumstances substantially different from those in the case at bar. But we agree with the district court that if the Utah Supreme Court was to rule on the case before us it probably would apply the more generous trend of other states and uphold the validity of the deed when surrounding circumstances indicate the grantor intended that result, as they do here.

II

The United States has suggested that we might certify this question to the Supreme Court of Utah for its definitive answer. We do not do so because we are satisfied that even if we have erroneously interpreted Utah law on this issue, the stipulated facts sufficiently establish that the United States had acquired good title by adverse possession by 1955. *See* Utah Code Ann. § 78–12–7 (seven year adverse possession statute). Stubbs' claim therefore must fail regardless.

From at least 1937 until 1955 only the United States and the predecessor who conveyed to it acted as owners of this prop-

erty. Because Utah cannot tax the United States, it is no infirmity that the government did not pay real estate taxes on the land after acquiring what it thought was good title. *See Farrer v. Johnson*, 2 Utah 2d 189, 271 P.2d 462, 466 (1954). No other person paid real estate taxes on the tract. That the United States believed it had good title does not prevent its possession from being adverse to the rest of the world. The limitations statute is one of repose, to "quiet" challenges to the land's occupant claiming of right. Further, once the United States' title did mature, Stubbs could not similarly acquire ownership right by adverse possession against the government. 28 U.S.C. § 2409a(g).

Consequently we agree with the district court's determination that the United States holds valid title.

AFFIRMED.