CORNISH TOWN, a Utah municipal corporation, Plaintiff, Appellee, and Cross–Appellant,

v.

Evan O. KOLLER and Marlene B. Koller, husband and wife, Defendants, Appellants, and Cross–Appellees.

No. 19981.

Supreme Court of Utah.

July 20, 1988.

George W. Preston, Logan, for defendants, appellants, and cross-appellees.

Reed L. Martineau, Jody K. Burnett, Salt Lake City, for plaintiff, appellee and cross-appellant.

HALL, Chief Justice:

I

Cornish Town ("Cornish") initiated this action after a dispute arose over certain water rights and rights of way. Kollers counterclaimed for expenses associated with installing a waterline between Pearson Spring and their home. The case was tried to the court, without a jury. Thereafter, the court, ruling from the bench, entered findings of fact and conclusions of law providing in pertinent part:

FINDINGS OF FACT

....

3. The Defendants are the owners of real property surrounding the Pearson Spring ... and presently receive water for culinary and domestic purposes at their home through a private water line which is connected to the Plaintiff's line that carries water from the Pearson Spring to the Plaintiff's reservoir and treatment facilities.

4. That by deed ... [certain named parties, including Defendants' predecessor in interest] conveyed to Cornish Town [among other things, certain water rights].

5. Defendants['] Predecessor in interest reserved the right to use water for human drinking and stock watering purposes. This use to be confined to a wa-

ter flow through a ¾ inch tap and Grantees (Cornish) agreed to pipe the said water to the home of Lars Pearson, Defendants['] predecessor, for culinary and domestic purposes. All water to be measured through a culinary water meter. The tap is situated approximately 50 feet West of the Defendants' residence.

6. That the Defendants acquired the right, title and interest ... as it relates to the water right to be used through the ¾ inch tap.

7. That Emma Marie Pearson Dobbs, the owner of an undivided one-fifth interest in and to the Spring set forth above, did not convey her interest to Cornish Town, but by deed conveyed such water rights and real property to the Defendants herein as set forth in a deed....

. . . .

13. The Court finds from the testimony of the witnesses that Cornish Town has not be [sic] reason of the nature of its improvements in the Pearson Spring Basin area, effectively controlled and appropriated all of the water coming from the Pearson Spring area.

14. The Pearson Spring water flowing down Butler Hollow has been beneficially used by the Pearsons and their successors the Kollers.

15. That Plaintiff's evidence has failed to show a five-year period of nonuse from the Pearson Spring.

16. That the Defendants are the owners of ⅕ interest in the Pearson Spring to cover the irrigation period from April 1st to September 30th, together with year round stock watering rights as set forth in the Kimball Decree....

17. That Defendants have the right to have their share of water from Pearson Spring flow into Butler Hollow during the irrigation period as described above and for stock watering.

18. That the Defendants are the owners of the rights to culinary water from the Pearson Spring as set forth in the quit claim deed from Emma Pearson.... By reason thereof the Defendants are not an appropriator of the water and Defendants' rights are fixed by the grant

in the deed to Emma Pearson, et al[.] and her successors in interest....

. . . .

20. The Court finds that the Defendants are entitled to receive the water but that Defendants are not entitled to say where they receive it from, and that the source is not restricted solely to the Pearson Spring. The Court finds that the Plaintiff is entitled to determine where the union with the Cornish line will be located and shall thereafter provide and pipe through a ¾ inch tap to the home of the Defendants, culinary water as set forth in the deed.

21. The Court finds that the Pearson Spring water supply is not one single spring, but may be composed of several springs.

22. That Defendants' Counterclaim for damages for the installation of a pipeline is hereby denied.

. . . .

## CONCLUSIONS OF LAW

. . . .

3. That judgment should enter decreeing that the Defendants are the owners of a right to a one-fifth in Pearson Spring to cover the irrigation period from April 1st to September 30th of each year and for stock watering and domestic purposes as adjudicated in the Kimball Decree to flow down Butler Hollow.

4. That Defendants are not an appropriator of the tap water from the Cornish Municipal water system, but are the owners of a right to culinary water as evidenced by a grant in a deed ... from Emma Pearson....

5. The Court concludes that the grant of the water right is not restricted solely to the source of water of Pearson Spring. The Court further concludes that the Plaintiff is entitled to determine where the union will be with the Cornish line and to provide and pipe through a ¾ inch tap to the home of Defendants for the purposes set forth in the grant.

6. That Defendants are not entitled to prevail on Defendants' Counterclaim.

Judgment was entered in accordance with these findings, and the parties brought their respective appeals.

## II

Kollers first argue on appeal that the trial court erred by finding that Cornish had the right to determine the point of connection of Kollers' culinary waterline with the Cornish water system. They claim their right to receive culinary water arises from a reservation in a deed given by Kollers' predecessors in interest (Pearsons) to Cornish wherein water rights in and to "one certain unnamed spring," now known as the Pearson Spring, were conveyed. Accordingly, Kollers contend that they are entitled to receive their water from the Pearson Spring and not Cornish's general culinary water supply. Cornish responds that the deed is silent concerning the location of the tap with the point of connection to Cornish's water system.

■ The deed, wherein several members of the Pearson family granted "[a]ll the right, title and interest ... in all water and water rights in and to one certain unnamed spring," which is now known as Pearson Spring, contains the following provision:

Grantors reserve the right to use water for human drinking and stock-watering purposes. This use to be confined to a water flow through a ¾" tap, and grantee agrees to pipe the said water to the home of Lars Pearson, for culinary and domestic purposes. All water to be measured through a culinary meter.

Resolution of this first issue requires construction of the grant. Utah Code Ann. § 73–1–10 (1980) provides that water rights shall be transferred by deed in substantially the same manner as real estate, with an exception which is not relevant here. Accordingly, the rules governing the construction of deeds generally apply when construing an instrument conveying water rights.[1] The primary rule regarding construction of deeds is to give effect to the intentions of the parties as expressed in the deed as a whole.[2] In this regard, we have stated that in the absence of ambiguity, the construction of a deed is a question of law for the court.[3] In such a case, we are not bound by the trial court's determination of the meaning of the writing.[4]

■ In the instant case, the trial court concluded that Kollers' water right under the deed was not restricted "solely to the source of water of Pearson Spring." However, the plain language of the deed indicates that the grantors "reserved" in themselves the water rights indicated. By its very nature, a "reservation" is a clause in a deed or other instrument of conveyance by which the grantor creates and reserves to himself some right, interest, or profit relative to the estate granted. Ownership is one of the conditions which must exist as the basis of a valid reservation.[5] Since Kollers' predecessors in interest, the Pearsons, did not own the Cornish water system, the Pearsons could not have "reserved" to themselves rights to water from that system. Indeed, Cornish's brief appears to indicate that its water system was not even built at the time of the conveyance. Instead, the Pearsons must have "reserved" in themselves rights in the water which was the subject of the conveyance, namely, the water flowing from Pearson Spring.

In view of this analysis, the arguments advanced by Cornish are unavailing. If Cornish did not desire to supply water under the deed from a specific source of water, it should not have accepted a deed containing this reservation. Accordingly, we find Kollers' first point to have merit, requiring a partial reversal of the judgment in this case.

## III

■ Kollers' next point is that the trial court erred by finding that the "Pearson

---

1. *See* Utah Code Ann. § 73–1–10 (1980); *see also* 93 C.J.S. *Waters* § 190, at 986 (1956).

2. *Chournos v. D'Agnillo,* 642 P.2d 710, 712 (Utah 1982); *Hartman v. Potter,* 596 P.2d 653, 656 (Utah 1979).

3. *Hartman,* 596 P.2d at 656.

4. *See id.*

5. *See id.* at 656–57.

Spring water supply is not one single spring, but may be composed of several springs." Kollers' argument fails for several reasons. First, review of findings of fact is controlled by rule 52(a) of the Utah Rules of Civil Procedure. To mount a successful challenge to trial court findings under that rule, an appellant must marshall the evidence supporting the trial court's findings. Only then can we determine whether those findings are clearly erroneous. Because Kollers have failed to make such a showing in this case, the trial court's determination will not be disturbed.[6]

Second, Kollers have failed to provide the Court with the entire transcript of the proceedings below. This Court has repeatedly held that an appellant may not succeed on a claim of error when relevant portions of the record are not before us; in such a case, the proceedings before the trial court are presumed to support the trial court's findings.[7] For the above reasons, we find Kollers' second point to be without merit.

## IV

■ Kollers' third point is that the trial court erred by dismissing their counterclaim. The trial court determined that Kollers were not entitled to recover on their counterclaim, which was brought to capture the cost of installing a new pipeline. Kollers installed the pipeline after Cornish advised them that it had no responsibility to replace the line. In ruling on the counterclaim from the bench, the trial court stated:

> As to the damages, there is testimony and I feel that under this Cornish was obligated to provide the water as previously stated and in the deed. There's testimony that they were not doing so, there's testimony that they refused to do anything about it. Now I feel that Mr. Koller had the right then to go see about his water pressure. And he testified

that when he opened it up he found it full, the T, full of debris, roots, clogging his water. And I feel that he would have a right to replace that and put it in the proper shape to get his pressure. There's no evidence there's anything wrong with the rest of the line. I just think he went too far. This doesn't give him a right to design his own water system, change its location, when he could make his own remedy and would be required I think and could charge the bill to correct the problem at the place where it came out of the T, and that's the only evidence we have that there was anything wrong with it. There isn't any evidence there was anything wrong with the line going all the way down to the house so he could put in his other one.

[Defense Counsel]: There was evidence that the bottom of the line was also filled up and its size was becoming smaller than the restriction.

THE COURT: I know, but there is no evidence that you couldn't have—that you had to replace this whole line, put in a different place with four-inch pipe or even replace the whole line. All that line that's left there under the ground, you might still be able, if you get a proper connection on it, will work fine. I just say that on the Counterclaim you failed to convince me by the preponderance of the evidence that all of that was necessary. I'm convinced by the preponderance of the evidence there was something needed to be done up to where the water came out of that piece that you got in evidence, but that's about as far as I say your proof went.

Now if you have a specific bill on that portion of it I'll grant judgment for that. But I didn't peruse those bills enough to pick that out. But not the whole line from where you change direction and go all the way down the hill.

6. See Redevelopment Agency v. Tanner, 740 P.2d 1296, 1301 (Utah 1987).

7. Burke v. Burke, 733 P.2d 498, 498 (Utah 1986) (per curiam); Wood v. Myrup, 681 P.2d 1255, 1257 (Utah 1984); see In re Cluff's Estate, 587 P.2d 128, 128 n. 1 (Utah 1978); see also Union Bldg. Materials Corp. v. Kakaako, 5 Haw.App. 146, 149–153, 682 P.2d 82, 86–88 (1984), reconsideration granted, 5 Haw.App. 683, 753 P.2d 253.

Kollers have not drawn the Court's attention to any evidence on this issue contradicting the trial court's perception thereon. Therefore, we find this point of Kollers' appeal to be without merit.

## V

Finally, Cornish in its cross-appeal contends that the trial court erred in failing to clarify the respective seasonal water rights of the parties and in concluding that Kollers held a one-fifth interest in the Pearson Spring. As support for these claims, Cornish argues that Kollers and their predecessors forfeited the disputed water right by the absence of any beneficial use thereof. Also, Cornish contends that Kollers should be equitably estopped from claiming the one-fifth interest by virtue of acquiescence to Cornish's use of all the Pearson Spring water in the town's construction and ongoing maintenance of its municipal waterworks. We disagree.

Again, the designated record on appeal contains only a partial transcript of the proceedings involved.[8] Therefore, we are unable to review the evidence as a whole and must presume that the trial court's ruling was founded upon admissible, competent, and substantial evidence.[9]

Furthermore, Cornish's claims appear predicated on our acceptance of its version of the testimony which was given and how the trial court should have perceived the circumstances as they existed. However, the facts Cornish advances in support of its arguments are chosen to the exclusion of other evidence in the partial record we have before us supporting the lower court's decision. Due to the trial court's advantaged position, the presumptions favor its judgment.[10] Where there is dispute and disagreement in the evidence, we assume that the trial court believed those aspects and fairly drew the inferences to be derived therefrom which gave its decision support.[11] To this end, the trial court did not find credible the evidence and testimony Cornish presented. Instead, the court viewed the evidence as supporting the determination that Kollers maintained a one-fifth interest in the water from Pearson Spring and that the watering period runs as specified. Given the record before us and the facts of this case, these determinations do not merit reversal herein.

Based upon the foregoing, the decision of the trial court is affirmed in part and reversed in part and the case is remanded for proceedings consistent with this opinion. Each party to bear its own costs.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.

**8.** See R. Utah S.Ct. 11(e)(2).

**9.** Id.; see also Smith v. Vuicich, 699 P.2d 763, 764–65 (Utah 1985) (per curiam).

**10.** Redevelopment Agency, 740 P.2d at 1301–02.

