[Cite as *Bates v. Bates*, 2022-Ohio-1055.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## NOBLE COUNTY

HOWARD F. BATES, ET AL.,

Plaintiffs-Appellees,

v.

JEFFREY BATES, ET AL.,

Defendants-Third-Party Plaintiffs-Appellants,

v.

GLORIA KEYLOR, ET AL.,

Third-Party Defendants-Appellees.

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 NO 0482**

Civil Appeal from the
Court of Common Pleas of Noble County, Ohio
Case No. CVH-219-0030

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

**JUDGMENT:**
Affirmed

[Cite as *Bates v. Bates*, 2022-Ohio-1055.]

*Atty. Andrew P. Lycans, Atty. Eric T. Michener*, Critchfield, Critchfield & Johnston, LTD., 225 North Market Street, Wooster, Ohio 44691, for Plaintiffs-Appellees and

*Atty. Aaron M. Bruggeman, Atty. Zachary D. Eddy,* Bricker & Eckler LLP, 160 E. Main Street, Barnesville, Ohio 43713, for Defendants-Third-Party Plaintiffs-Appellants and

*Atty. Kyle Witucky, Atty. Grant Stubbins, Atty. Carter Brown,* Stubbins, Watson, Bryan & Witucky Co., LPA, P.O. Box 488, Zanesville, Ohio 43702, for Third-Party Defendants-Appellees.

Dated:
March 31, 2022

**Donofrio, J.**

{¶1}     Defendants/third-party plaintiffs/appellants, Jeffrey and Melanie Bates (appellants), appeal from a Noble County Common Pleas Court judgment denying their motion for summary judgment and granting the motion for summary judgment of plaintiffs/appellees, Howard and Rita Bates (appellees).

{¶2}     In 1934, Mary Bates quit-claimed to Howard Bates her interest in approximately 122.491 and 1.101 acres of property located in Marion Township, Noble County, Ohio. On January 10, 1935, Howard Bates died intestate, leaving his wife, Anna, and their children, Harry, Olive, Margaret, Martha, Bonnie, and Byron.[1] Intestate laws granted Anna a 1/3 interest in the property, and granted each of the children a 1/9 interest.

{¶3}     In 1971, Harry Bates conveyed his 1/9 interest in the property to Byron and his wife Donah. Thereafter, Anna and the other Bates children conveyed their 7/9 total interest in the property to Byron and Donah as well. The deed from Anna and her children (Reservation Deed) stated the following:

> EXCEPTING AND RESERVING to the grantor, Anna Bates, and her
> assigns, an estate in the above described premises for and during
> the natural life of said grantor, Anna Bates.

---

1 Howard and Anna had a seventh child, John, but he died in 1927, before his father.

> To have and to hold said premises, with all the rights, easements and appurtenances thereunto belonging and all the rents, issues and profits thereto, from and after the death of the grantor, Anna Bates, to the said grantees, their heirs and assigns forever, subject, however, to all legal highways and subject to the exceptions, reservations, and conditions herein contained.
>
> RESERVING, further, to the above grantor Anna Bates, the one half interest in the oil and gas in and under the above premises together with the right to lease and dispose of the same in any manner she sees fit together with the right to receive and keep to her own use the royalties therefrom.

**{¶4}** Anna died intestate on September 3, 2001. Her son Harry, died before her, and he was survived by his children, Jon Bates[2], third-party defendant/appellee Gloria Keylor, and appellee Howard. Anna's surviving children were Olive Starr, Margaret Ewing, Martha Carpenter, Bonnie McElfresh[3], and Byron Bates.

**{¶5}** Byron and his wife Donah had a child, Jeffrey (appellant), and subsequently conveyed to appellants (Jeffrey and his wife Melanie) their entire interest in the property and whatever oil and gas interest they owned. On October 31, 2014, appellants sent a notice of intent to declare the reserved oil and gas interest abandoned under R.C. 5301.56 and notice was sent to the aunts and cousins of appellant Jeffrey, which included appellee Howard.

---

[2] On January 18, 2022, a Notice of Suggestion of Death of Jon N. Bates and App. R. 29(A) Motion for Substitution was filed in this Court. The motion requested that Alice Bates, the wife of Jon N. Bates, who died on February 9, 2020, be substituted as a party in this case for Jon N. Bates, as she is his surviving spouse and sole beneficiary of Mr. Bates' estate. This Court GRANTS the motion and ORDERS that Alice Bates, surviving spouse of Jon N. Bates, be substituted as party for him in this case.

[3] On January 18, 2022, a Notice of Suggestion of Death of Bonnie J. McElfresh, also known as Bonnie J. Bates, and App. R. 29(A) Motion for Substitution was filed in this Court. The motion requested that Diane Brown be substituted as a party in this case for Bonnie McElfresh, who died on September 24, 2021, as Diane Brown is Bonnie McElfresh's daughter, Power of Attorney preceding her mother's death, and the proposed administrator of the estate of Bonnie McElfresh, as per the estate of Bonnie McElfresh. This Court GRANTS the motion and ORDERS that Diane Brown, daughter of Bonnie McElfresh, also known as Bonnie J. Bates, be substituted as a party in this case for Bonnie J. McElfresh, also known as Bonnie J. Bates.

**{¶6}** On December 16, 2014, Martha Carpenter, appellant Jeffrey's aunt, recorded a claim to preserve mineral interest, which identified appellee Howard as a successor in interest to Anna and a holder under R.C. 5301.56(A)(1). Martha's affidavit accompanying the claim stated that she intended to preserve her rights to the mineral interest and all other holders in the mineral interest under R.C. 5301.56(C)(2), which included appellee Howard.

**{¶7}** Thereafter, on December 26, 2014, appellants filed an affidavit of abandonment and a corrected affidavit of abandonment on January 15, 2015.

**{¶8}** On April 4, 2019, appellees Howard and Rita (wife of Howard) filed a complaint in the Noble County Court of Common Pleas against L.D. Jenkins, Antero Resources Corporation, and appellants, seeking to quiet title their "ownership of 1/36 of the oil and gas rights underlying the Property." Appellees Howard and Rita asserted fraud against L.D. Jenkins regarding a quit-claim deed and a lease they signed concerning their inherited oil and gas interests. Among other remedies, appellees Howard and Rita sought declarations that the quit-claim deed and lease were invalid and to quiet title against L.D. Jenkins and Antero. They also sought to quiet title to the 1/36 interest against appellants.

**{¶9}** On July 1, 2019, appellants filed an answer, counterclaim, and cross-claim. They asserted that they owned all of the oil and gas rights under the property pursuant to the estoppel by deed doctrine. They sought a court declaration that Anna had reserved only a 1/6, and not a 1/2 interest in the oil and gas under the property. In an agreed order, Antero Services Corporation was dismissed with prejudice. On July 12, 2019, appellants filed a third-party complaint against all of the other lineal heirs, the third-party defendants.

**{¶10}** On February 10, 2021, the court issued an agreed entry indicating that appellees and appellants Jeffrey and Melanie Bates had agreed to the dismissal of the first count of the counterclaim which requested a declaratory judgment and asserted estoppel by deed against appellees.

**{¶11}** Appellants filed a motion for summary judgment, asserting that the reservation by Anna to the oil and gas interest was ambiguous, and based on the conduct of the parties, they were entitled to own the entirety of the surface and minerals in and under the property. They alternatively asserted that if they were not so entitled, a latent

ambiguity existed in the reservation language of the deed and at worst, they owned the entire property and all but a 1/6 interest in the oil and gas in and under the property.

{¶12} Third-Party Defendants, including Gloria Keylor, also filed a motion for summary judgment, asserting that they were entitled to judgment as a matter of law on appellants' third-party complaint. They asserted that estoppel by deed did not apply. They also contended that the parties' intent in the Reservation Deed was to convey their collective shares with Anna's shares to own and reserve a 1/2 interest in the oil and gas. They submitted that the deed language clearly showed this and multiple grantors may agree to reserve their collective shares with those of one party to establish the 1/2 interest.

{¶13} Appellants Jeffrey and Melanie Bates also filed a motion for summary judgment against appellees' complaint and counterclaim. They asserted that the court should find that the deed reservations were clear and unambiguous, and Anna reserved a 1/2 interest in the oil and gas in fee simple due to the collective shares owned by her children, who added their shares to her shares for reservation.

{¶14} On March 26, 2021, the trial court issued a judgment entry granting the motions for summary judgment filed by appellees and the third-party defendants, and denying appellants/third-party plaintiffs' motion for summary judgment. The court also granted summary judgment against L.D. Jenkins and subsequently entered a nunc pro tunc order as to L.D. Jenkins. In its entry, the trial court found that the deed by estoppel did not bar the third-party defendants from inheriting a fee simple interest from Anna's estate. The court held that no facts supported a finding that Olive, Margaret, Martha, and Bonnie intended to convey anything more than the interests that they actually possessed at the time that the reservation to Anna was made.

{¶15} The court pointed out that appellants sought to raise an assertion for the first time in their motion for summary judgment that had not been raised before. They had asserted that in the 1971 deed, the parties intended that the oil and gas interest would terminate upon Anna's death. The court held that such an assertion had to be raised in the operative pleadings and could not be raised for the first time on summary judgment. The court then held that the deed language was unambiguous and it clearly stated that a life estate in the property was reserved to Anna in the first clause. The court further found that the second clause of the deed conveyed all rights in the property to the grantees of

- 6 -

the deed, subject to the reservations contained in the deed, which included a reservation to Anna in the third clause to a 1/2 interest in the oil and gas. The court held that it could not interpret the deed in appellants' suggested manner because it would render superfluous and meaningless the language in the second clause relating to the conveyance remaining subject to reservations after Anna's death. The court found that no language in the deed indicated that the second reservation was only a life estate.

{¶16} The court also rejected appellants' request to find that Anna and her children could not have reserved a 1/2 interest in the oil and gas in and under the property. The court explained that Ohio law recognizes that multiple grantors can create new property rights by making a reservation in favor of one or more of the parties to a deed. The court calculated that the grantors owned a total 7/9th interest in the property, and they could collectively reserve a 1/2 interest in all of the oil and gas rights under the entire property and convey it to Anna. The court further held that the clear language of the deed stated "one half interest" and it would not rewrite the parties' intent that they meant a 1/2 of 1/3 interest after the fact when it was not written in the deed. The court further held that even if it had found an ambiguity and looked to parol evidence of the parties' actual intent, no outside evidence was proffered as to actual intent. The court also ruled that the affidavits of abandonment filed by appellants under the Dormant Mineral Act were invalid as there was no dispute that a claim to preserve was timely filed and was sufficient to avoid abandonment.

{¶17} Based upon its findings, the court issued an order holding that Anna owned a 1/2 interest in all of the oil and gas mineral rights under the property when she died. The court quieted title to the oil and gas underlying the property to 23 individuals, including a 1/36 interest to appellee Howard, 1/36 to appellee Gloria Keylor, 1/12 to Bonnie McElfresh, and 3/40 to appellants.

{¶18} On April 16, 2021, appellants filed the instant appeal. They raise three assignments of error.

{¶19} Appellants present the first and second assignments together, which assert:

> **The trial court erred in holding that the Severance Deed was unambiguous as a matter of law**.

**The trial court erred in holding that Anna Bates effectively reserved and/or excepted one-half (1/2) of the oil and gas minerals underlying the Property.**

**{¶20}** Appellants acknowledge that Ohio contract law provides that if a contract's language is "clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indust. of Ohio, Inc.,* 15 Ohio St.3d 321, 322, 474 N.E.2d 271, 272 (1984) (citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 374 N.E.2d 146 (1978).

**{¶21}** However, they contend that the oil and gas reservation language is ambiguous. They cite our holding that a "contract is considered ambiguous if the language is 'unclear, indefinite, and reasonably subject to dual interpretations or is of such doubtful meaning that reasonable minds could disagree as to its meaning.' " *Cadle v. D'Amico,* 7th Dist. Mahoning No. 15 MA 0136, 2016-Ohio-4747, 66 N.E.3d 1184, ¶ 24 (citing *Beverly v. Parillas*, 165 Ohio App.3d 802, 808, 2006-Ohio-1286, 848 N.E.2d 881, ¶ 24 (7th Dist)). They also cite our holding in *Porterfield v. Burner Land Company, Inc.*, 7th Dist. Harrison No. 16 HA 0019, 2017-Ohio-9045, 103 N.E.3d 152, ¶ 17 (citing *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 521, 639 N.E.2d 771 (1994)) that "when the plain language of the written instruments is ambiguous, then a court can look to parol evidence to resolve the ambiguity and ascertain the parties' intent."

**{¶22}** Appellants provide two possible interpretations of the oil and gas reservation that they propose are reasonable and render the reservation ambiguous. The first is that: "[f]rom and after the death of Anna Bates, the Reserved Interest passed directly to the grantees (Byron and Donah) in the Severance Deed, and then ultimately to the Bates through a series of subsequent conveyances." (Appellants' Br. at 8). Appellants cite rules of contract interpretation courts should apply when finding the language of a contract ambiguous. They assert that the primary rules of contract interpretation first apply, and the secondary rules apply only if the parties' intent cannot be determined from the primary rules. *Sutton Bank v. Progressive Polymers, L.L.C.,* 161 Ohio St. 3d 387, 2020-Ohio-5101, 163 N.E.3d 546, ¶ 15.

**{¶23}** Appellants assert that the most important primary construction rule here is the "four corners rule." They explain that this rule provides that a deed must be read as a

whole. Applying this rule, appellants assert that Anna's reservation to a 1/2 interest in the oil and gas must be read in conjunction with the entire Reservation Deed, particularly the language preceding the oil and gas reservation. They submit that the language in the first reservation is for a life estate for Anna in the property. They quote the paragraph after that reservation, which provides that after Anna's death, there is a conveyance of "all the rights, easements, and appurtenances thereunto belonging, and all the rents, issues, and profits thereof, from and after the death of the grantor, Anna Bates, to the said grantees, their heirs and assigns forever." Appellants contend that "all the rights" to the property passing to the "grantees, their heirs and assigns forever" should have led the court to conclude that upon Anna's death, Byron and Donah became the fee owners of the reserved interest.

**{¶24}** We note that the trial court pointed out that appellants waived the right to raise this issue since they raised it for the first time in their response to appellees' motion for summary judgment. The trial court cited to our decision in *Sharp v. Miller*, 2018-Ohio-4740, 114 N.E.3d 1285, ¶ 37 (7th Dist.) as support. In *Sharp*, we held that an affirmative defense under the Marketable Title Act could not be raised for the first time in a motion for summary judgment. *Id*. We explained that an affirmative defense must be raised in the pleadings or it is waived. *Id.* In this case, appellants did not raise the issue of a life estate reservation as to the oil and gas interest until their response to the motion for summary judgment filed by appellees. The trial court found that waiver applied, but nevertheless provided analysis as to the deed language. We shall do the same.

**{¶25}** Appellants further assert that if the primary rules of contract construction cannot determine the parties' intent, the court should apply the secondary rules and specifically the rule of *contra proferentem*, which provides that the deed must be construed against the drafter, who is Anna.

**{¶26}** Appellants also focus on the word "RESERVING" in the last paragraph of the deed relating to the 1/2 interest. They contend that the doctrine of *noscitur a sociis* ("it is known from its associates") should be used to interpret the ambiguous deed language. They explain that this doctrine states that if a word's meaning is unclear, the meaning may be derived from the meanings of surrounding or accompanying words. Applying this doctrine, appellants look to the words after "RESERVING, further" in the oil

Case No. 21 NO 0482

and gas reservation and contend that these words must be interpreted in the same way as the preceding words "to have and to hold…all the rents, issues and profits thereof, from and after the death of the grantor, Anna Bates, to the said grantees, their heirs and assigns, forever." They identify those grantees as Byron and Donah, who therefore would have assumed ownership of the reserved interest upon Anna Bates' death in 2001. They contend that the reservation to the 1/2 interest of oil and gas in Anna was limited to her lifetime, consistent with the same limiting words in the preceding paragraphs and reservations.

**{¶27}** Appellants state the second "reasonable" interpretation of the oil and gas reservation as follows: "Appellants own the oil and gas rights underlying the Property, subject to a 1/6 reservation." They contend that the oil and gas reservation language contained a "latent ambiguity" because Anna owned only a 1/3 interest at the time that she executed the deed, and not a 1/2 interest. Appellants define "latent ambiguity" as "a defect which does not appear on the face of language used or in an instrument being considered. It arises when language is clear and intelligible and suggests but a single meaning, but some intrinsic fact or some extraneous evidence creates a necessity for interpretation or a choice between two or more possible meanings, as where the words apply equally well to two or more different subjects or things." (Appellants' Br. at 12, quoting *Violante v. Village of Brady Lake*, 11th Dist. Portage No. 2012-P-0054, 2012-Ohio-6220 [citations omitted]). They conclude that Anna must have intended to reserve 1/2 of her 1/3 interest, or a 1/6 interest in the oil and gas, since Ohio law does not allow a grantor to reserve or retain an interest in excess of that which the grantor owns. (Appellants' Br. at 13, citing 35 Ohio Jur.3d Deeds § 77; *accord Swingler v. Robinson*, 321 S.W.2d 29, 31 (Mo. App. 1959) [quotation omitted]; *Hartman v. Potter*, 596 P.2d 653, 657 (Utah 1979) [quotation omitted]).

**{¶28}** Appellants cite the *Hartman* case to illustrate why their interpretation is correct. They submit that the Utah Supreme Court in *Hartman* faced the same facts as the instant case because there, the grantor attempted to except 3/4 of the minerals underneath the property, even though he owned only 1/2 of the minerals at the time of the severance. *Id.* at 658. They cite that court's holding that the grantor must have intended to except 3/4 of the fractional 1/2 interest in the minerals, since a grantor could

not convey, except, or reserve more interest than he owned. *Id.* Appellants reason that the court in this case should have applied *Hartman* and held that Anna Bates could not reserve any more than 1/6 of the oil and gas interest that she owned, or 1/2 of the 1/3 interest. They conclude that they are therefore entitled to summary judgment finding that they own a 5/6 interest in the oil and gas interests, in addition to Anna's 1/6 interest, which would have passed from Byron to Jeffrey through intestate succession.

**{¶29}** The standard of review of the trial court's summary judgment ruling is de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we apply the same test as the trial court in determining whether summary judgment was proper. A court may grant summary judgment only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. *Mercer v. Halmbacher*, 9th Dist., 2015-Ohio-4167, 44 N.E.3d 1011, ¶ 8; Civ.R. 56(C). The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

**{¶30}** If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show that there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.,* 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993). In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

**{¶31}** In the case of contracts, deeds, or other written instruments, the construction of the writing is a matter of law, which is reviewed de novo. *Long Beach Assn., Inc. v. Jones,* 82 Ohio St.3d 574, 576, 697 N.E.2d 208 (1998). Under a de novo review, an appellate court may interpret the language of the contract, substituting its

interpretation for that of the trial court. *Witte v. Protek* Ltd., 5th Dist. Stark No. 2009CA00230, 2010-Ohio-1193, 2010 WL 1076070, ¶ 6, citing *Children's Medical Center v. Ward*, 87 Ohio App.3d 504, 622 N.E.2d 692 (2d Dist.1993).

**{¶32}** Written instruments "are to be interpreted so as to carry out the intent of the parties, as that intent is evidenced by the contractual language." *Skivolocki v. East Ohio Gas Co.*, 38 Ohio St.2d 244, 313 N.E.2d 374 (1974), paragraph one of the syllabus. "When construing a deed, a court must examine the language contained within the deed, the question being not what the parties meant to say, but the meaning of what they did say, as courts cannot put words into an instrument which the parties themselves failed to do." *Johnson v. Consol. Coal Co.*, 7th Dist. Belmont No. 13 BE 3, 2015-Ohio-2246, 2015 WL 3623635, ¶ 15 quoting*, McCoy v. AFTI Properties, Inc.*, 10th Dist. Franklin No. 07AP-713, 2008-Ohio-2304, 2008 WL 2026437, ¶ 8. If the terms of the written instrument are clear and unambiguous, courts must give the words their plain and ordinary meaning and may not create a new contract by finding the parties intended something not set out in the contract. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

**{¶33}** But when the plain language of a written instrument is ambiguous, a court can look to parol evidence to resolve the ambiguity and ascertain the parties' intent. *Illinois Controls, Inc. v. Langham*, 70 Ohio St.3d 512, 521, 639 N.E.2d 771 (1994); *City of Steubenville v. Jefferson Cty.*, 7th Dist. Jefferson No. 07JE51, 2008-Ohio-5053, 2008 WL 4416062, ¶ 22. Terms in a contract are ambiguous if their meanings cannot be determined from reading the entire contract, or if they are reasonably susceptible to multiple interpretations. *First Natl. Bank of Pennsylvania v. Nader*, 2017-Ohio-1482, 89 N.E.3d 274, ¶ 25 (9th Dist.) Parol evidence is used only to interpret the terms, and not to contradict them. *Id.*, citing *Blosser v. Enderlin*, 113 Ohio St. 121, 134, 148 N.E. 393 (1925). "The decision as to whether a contract is ambiguous and thus requires extrinsic evidence to ascertain its meaning is one of law*." Nader*, quoting *Ohio Historical Soc. v. Gen. Maintenance and Eng. Co.*, 65 Ohio App.3d 139, 146, 583 N.E.2d 340 (10th Dist.1989).

**{¶34}** We agree with the trial court that the language of the oil and gas interest reservation was unambiguous. Applying the "four corners" doctrine, as appellant's

request, actually negates their interpretation of the oil and gas reservation. Appellants contend that the language in the oil and gas reservation must be read in conjunction with the language of the life estate property reservation and the grants and warranties language preceding it. This Court agrees.  A review of this language and in the deed as a whole does not lead to a determination that Anna reserved only a life estate in the oil and gas interest. The first reservation for the property itself definitely conveys a life estate as it specifically states that Anna and her assigns excepted and reserved "an estate in the above described premises *for and during the natural life of* said grantor, Anna Bates." [emphasis added.]

**{¶35}**   The second paragraph following that life estate, and preceding the oil and gas reservation, goes on to grant the  "grantees (of the deed in dispute in this case), their heirs and assigns forever," the right "to have and to hold said premises, with all the rights, easements and appurtenances thereunto belonging, and all the rents, issues and profits thereof." The paragraph grants this right "subject, however, to all legal highways and *subject to the exceptions, reservations, and conditions herein contained*." [emphasis added].

**{¶36}**   It is clear from this language that when Anna's life estate ends upon her death, the property passes to the grantees of the deed, but subject to the other "exceptions and reservations" in the deed. The oil and gas reservation contains no language concerning a life estate as was plainly set forth in the life estate reservation in the property. Had the parties intended to grant only a life estate in the oil and gas interest, they would have used similar language as the life estate grant to the property. They did not. No natural meaning or inference flows from the life estate language for the property to the oil and gas interest reservation. Therefore, upon Anna's death, her oil and gas interest passed to her heirs.

**{¶37}**   In addition, the words immediately surrounding the oil and gas reservation state that the grantor has the "right to lease and dispose of the same in any manner she sees fit together with the right to receive and keep to her own use the royalties therefrom." Thus, Anna is granted the right to dispose of the oil and gas interest granted as she desires. A life estate in the oil and gas interest would not grant such a right to the life tenant as the remainderman would hold interests during the life of the life tenant.

Accordingly, this Court finds that the deed language is clear and unambiguous that the oil and gas reservation was not limited to a life estate.

**{¶38}** Applying *noscitur a sociis* also fails to establish that the oil and gas reservation was only a life estate. The wording of the oil and gas reservation is not analogous or similar to the wording granting the life estate in the property. An interpretation that the oil and gas reservation clause was also a life estate would render the oil and gas reservation clause itself superfluous and meaningless. The contract would be interpreted to mean that under the first reservation, Anna had a life estate in the entire property, which would include the oil and gas under the property, and the oil and gas reservation would be a second life estate to the oil and gas interest. It would also render meaningless the language in the second paragraph stating that Anna's grantees would be granted all rights to the property after her death, "subject to the exceptions, reservations, and conditions herein contained" as no other exceptions, reservations, or conditions were contained besides the oil and gas reservation. In interpreting contracts, courts should avoid interpretations that render terms or phrases superfluous or meaningless. *Fifth Third Mortgage Co. v. Rankin*, 4th Dist. Pickaway No. 10CA45, 2011-Ohio-2757, at ¶ 24, *citing Capital City Community Urban Redevelopment Corp. v. City of Columbus*, Franklin App. No. 08AP–769, 2009–Ohio–6835, at ¶ 30 ("When interpreting a contract, we will presume that words are used for a specific purpose and will avoid interpretations that render portions meaningless or unnecessary.").

**{¶39}** Further, we find no latent ambiguity in the language of the oil and gas reservation. Appellants contend that Anna's 1/2 interest reservation was a latent ambiguity because while its language was clear and intelligible, Anna only owned a 1/3 interest in the oil and gas when she executed the reservation. They assert that a grantor cannot convey more than she owns under Ohio law.

**{¶40}** Appellants contend that the facts in this case are similar to those of *Hartman v. Potter,* 596 P.2d 653, 657 (Utah 1979). In that case, the Potters were predecessors to defendant Ora Ann Potter of a fee interest in a 160-acre parcel of property, including the mineral rights. The Potters conveyed 1/2 of the mineral rights to Bennett and subsequently sold that interest to the Hartmans by warranty deed, which stated that the grantors reserved 3/4 of "all the oil, gas, and mineral rights" to the land.

The Hartmans knew about the conveyance to Bennett and had received an opinion stating the Potters owned only 1/2 of the mineral rights. William Potter, Jr. succeeded the Potters' interest and leased 1/2 of the oil and gas to Altex Oil. Husky Oil Company, the other defendant in *Hartman*, succeeded the interest and retained the leasehold interests of Altex.

**{¶41}**    The Hartmans asserted that the trial court should find no ambiguity in the deed and simply look to the intent of the parties and construe the deed as a matter of law. They asserted that the court could interpret the deed in two ways.  The first was to grant them a 1/4 interest in all of the mineral rights by assuming the Potters did not recognize the prior conveyance to Bennett and intended to convey 1/4 of the whole to them and reserve 3/4 to themselves. The other interpretation was that the deed granted them a 1/4 interest in the oil and gas by assuming that the Potters recognized and wanted to protect the conveyance to Bennett, reserve a 1/4 interest for themselves, and convey a 1/4 interest to them. The Hartmans further acknowledged a third interpretation of the deed could be that the Potters recognized Bennett's 1/2 interest and they wanted to reserve 3/4 of their remaining 1/2 and convey to the Hartmans a 1/8 interest.

**{¶42}**    The defendants asserted that the Potters were confused on the amount of mineral rights they retained after the Bennett conveyance and intended to reserve the entire remaining 1/2 interest, which exceeded what they owned, and they therefore over-reserved a 3/4 interest of the whole. They contended that this over-reservation effectively reserved what the Potters actually owned, which was a 1/2 interest.

**{¶43}**    The trial court agreed with defendants and held that there was no mineral interest conveyance from the deed. The court explained that no mineral interest was conveyed because the conveyance to Bennett was 1/2 of the Potters' interest and the defendants' predecessors intended to reserve the balance of the interest since they had over-reserved the amount that they owned, which was a total of 3/4 of the mineral interests. *Id.* at 656-657.

**{¶44}**    The Utah Supreme Court looked to contract interpretation rules and general rules regarding deed reservations and exceptions. *Id.* at 656-657. The court found that it could not assume that the Potters did or did not recognize their prior conveyance to Bennett or that they were confused about the quantity granted him. *Id.* The court held

that the Potters and the Hartmans were both charged with knowing what the Potters conveyed and found that the conveyance to Bennett severed 1/2 of the mineral interest and therefore created a separate and distinct estate held by Bennett. The court concluded that the deed language reserving 3/4 of the oil, gas and mineral rights was clear and unequivocal and did not create a new right in the Potters that they did not already have. The court held that this was an exception and not a reservation if new rights were not created.  The court concluded that:

> Since Potters could not convey, except, or reserve more than they owned, and since the recital makes no reference to the already severed 1/2 mineral interest in Bennett no longer "belonging" to the land, we can only conclude that Potters excepted three-fourths of their fractional 1/2 interest in the minerals. Consequently, the deed in question conveyed a one-eighth mineral interest to plaintiffs and "reserved" to Potters a three-eighths interest, all of which, added to Bennett's 1/2 interest, comprises the whole mineral interest concerned.

*Hartman*, ¶ 17.

**{¶45}**    Relying on *Hartman*, appellants here assert that the Court should find that the deed reservation language was ambiguous and hold that they are the owners of the entire oil and gas interest in and under the property.  Alternatively, they request that the Court find that they own the entirety of the surface and minerals subject only to the 1/6 reservation in favor of Anna.

**{¶46}**    Appellees contend that *Hartman* is distinguishable because accepting the deed at face value in that case resulted in a 125% interest reservation, while the instant case involves multiple grantors joining together in one deed to convey less than they own collectively, and reserve an interest in favor of their mother that was greater than her individual interest. They cite *Nichols v. Goughnour*, 820 N.W.2d 740 (N,D. 2012), where the North Dakota Supreme Court held that a single deed that conveys the interests of multiple grantors in a property can be used to reserve a mineral interest that could not be reserved by each grantor in individual deeds. They cite to *Cartwright v. Allen*, 12th Dist.

Fayette No. CA2011-10-025, 2012-Ohio-3631, ¶ 22 to assert that deed language is not rendered uncertain or ambiguous because the grantor has a misconception of what she owns. They further cite *Nonamaker v. Amos*, 73 Ohio St 163, 76 N.E. 949 (1905) and *Smith v. Collectors Triangle, Ltd.*, 7th Dist. Harrison No. 19 HA 0010, 2020-Ohio-4823 at ¶ 24, where the courts held that the law does not bar real estate interest owners from reapportioning their ownership percentages without using a deed.  They want this Court to recognize that a reservation must come out of what was granted and the reservation deed in this case granted appellants' predecessor "the undivided 7/9ths interest in and to the following described premises, while reserving 1/2 the oil and gas underlying the Property." (Parties' Stipulations).  Appellees point out that 1/2 of the oil and gas is less than the 7/9ths that the grantors collectively owned.

{¶47}  Appellants reply that the *Cartwright* case does not discuss latent ambiguities and that case undercuts appellees' assertions because the court there held that when the grantor has no title and is trying to vest title in a grantee, the conveyance is ineffective and grants nothing to the grantee. They contend that Anna owned 1/3 of the oil and gas interest and granted more than she owned, which renders her reservation ineffective. They also assert that the *Nonamaker* and *Smith* cases do not apply because they dealt with the statute of frauds as to verbal agreements of lessors concerning the apportionment of royalty interests, which are personal property, in an oil and gas lease.

{¶48}  In this case, the trial court held that the latent ambiguity doctrine did not apply because no ambiguity existed in the deed. The court reasoned that it was clear and intelligible that a 1/2 interest in the oil and gas rights were reserved to Anna and any possible misconception about the amount of interest that she owned and reserved did not render the reservation language ambiguous. The court held that Ohio law allows multiple grantors to create new property rights in a single grantor by making a reservation in favor of that one grantor, citing our decision in *Smith v. Collectors Triangle, Ltd.*, 7th Dist. Harrison No. 19 HA 0010, 2020-Ohio-4823 in support. The trial court reasoned that Anna and the other grantors, who collectively owned 7/9 interest, could collectively reserve a 1/2 interest in all of the oil and gas rights and grant this new interest in favor of Anna, their mother. The court found that "this was the clear intent of the parties, Anna was a grantor, and there is nothing in the law which would prevent those who collectively own a 7/9ths

interest in the oil and gas associated with a property from reserving ½ of the oil and gas in favor of one of the grantors." The trial court further held that it would not rewrite the deed to read that Anna reserved "one half of one third" of the oil and gas interest when the language clearly reserved a 1/2 interest.

{¶49} A latent ambiguity is defined as one that is not apparent from the language used or from the face of an instrument. *Barr v. Jackson*, 5th Dist. Delaware No. 08 CAF 09 0056, 2009-Ohio-5135, ¶ 36, citing *Conkle v. Conkle*, 31 Ohio App.2d 44, 285 N.E.2d 883 (1972). A latent ambiguity can exist if the deed language is unambiguous and suggests only one meaning, but an extrinsic fact makes it necessary to interpret, or a choice between two or more possible meanings, or if the words apply equally well to two or more different subjects or things. *Id.* Where a latent ambiguity appears in a deed, extrinsic evidence is admissible to help the court better interpret the parties' intent from the language used in the contract. However, extrinsic evidence may not be used to show the testator's intention. *Barr* at ¶ 36, citing *Shay v. Herman*, 85 Ohio App. 441, 83 N.E.2d 237 (1948).

{¶50} Here, the reservation specifically reserved a 1/2 oil and gas interest, although Anna owned only 1/3 of the interest. However, Anna and the other owners collected, combined, and conveyed their fractional interests and granted Anna more than the 1/3 interest that she owned individually. The reservation language is exact. Further, appellants fail to demonstrate that grantors are prohibited from combining their interests to convey to and then reserve for a single grantor who has less than the combined interest amount.

{¶51} Accordingly, appellants' first and second assignments of error lack merit and are overruled.

{¶52} This brings us to appellants' third assignment of error, which asserts:

**The Trial Court erred in holding that the doctrine of estoppel by deed/after-acquired title did not prevent the Bates Heirs from claiming an interest in the oil and gas minerals underlying the Property.**

Case No. 21 NO 0482

**{¶53}** Appellants contend that even if they are not the fee owners of all of the oil and gas rights under the property, appellees Keylor and the Bates Heirs, and any others claiming through Olive, Martha, Bonnie, or Margaret are estopped from claiming any interest in the property. They submit that the estoppel by deed doctrine provides "that if a grantor conveys property in a warranty deed and therefore obtains an interest in the same property, then the grantor is estopped from acquiring title to that property again." (Appellants' Br. at 15). Appellants reason that the estoppel by deed doctrine is based on the principle that someone who voluntarily places herself in a situation as to a matter is barred from denying it.

**{¶54}** Appellants conclude that because Olive, Martha, Bonnie, and Margaret conveyed their entire interests to Byron and Donah with general warranty covenants and made no exceptions or reservations for themselves, they are barred from denying that appellants acquired the mineral rights under the property when Anna died.

**{¶55}** Appellees note that a deed's language is presumed to express the parties' intent, unless its language is uncertain. They describe estoppel by deed as, "'if a grantee accepts a deed, the knowledge of its provisions is legally imputed to him; and, by its acceptance, he is bound by all of its provisions and is estopped to deny their legal effect." (Appellees' Br. at 21-22, quoting *37 Robinwood Assocs. v. Health Indust., Inc.*, 47 Ohio App.3d 156, 157 (10th Dist. 1988). They assert that Anna and four of her children transferred the rights to the property to Byron and Donah and Byron and Donah accepted the deed. Provisions in that deed, which was not challenged for almost five decades, included the life estate for Anna in the property, and reservation of 1/2 of the oil and gas rights under the property. Appellees conclude that Byron and Donah, and their heirs, were estopped from denying the legal effect of the reservations in the deed.

**{¶56}** The estoppel by deed doctrine was not addressed by the trial court. In any event, the doctrine "precludes a party from denying a certain fact recited in a deed executed or accepted by him in an action brought upon the instrument." *37 Robinwood Assocs.* at ¶ 6. The Tenth District Court of Appeals held that a grantee who accepts a conveyance, is bound by all of its provisions and is precluded from denying their legal effect. *Id.*, citing 2 Ohio Jurisprudence 3d (1983) 24, at fn. 11, Estoppel and Waiver, Section 13, and 35 Ohio Jurisprudence 3d (1982) 290, 291–292, Deeds, Section 58.

{¶57}    Appellants seek to use estoppel by deed to prevent Anna Bates' daughters, Olive, Martha, Bonnie and Margaret and their heirs, from claiming title to any part of the interest reserved to only Anna. They contend that Olive, Martha, Bonnie, and Margaret conveyed their entire interests in the property to Byron and Donah Bates with general warranty covenants and reserved nothing for themselves. Appellants conclude that they are therefore precluded by deed from denying that appellants acquired title to their entire interests in the property.

{¶58}    Appellees assert that it is appellants who are estopped by the deed because Byron and Donah accepted the deed transferring the property, which contained the life estate property reservation for Anna, and the right to 1/2 of the oil and gas rights under the property for Anna. Appellees assert that it is Byron and Donah who placed themselves voluntarily in the situation of acquiring the property subject to a life estate and a reservation to oil and gas rights and they cannot now, some five decades later, challenge the deed.

{¶59}    Appellees Keylor, et al. assert that estoppel by deed does not apply because Anna, Olive, Martha, Bonnie, and Margaret collectively conveyed their entire interest in the property to Byron and Donah, with the life estate for Anna and the reservation of the 1/2 oil and gas interest for Anna. They assert that the deed does not mention that the grantors conveyed any future interests. They cite to the plain language of the deed and assert that it gave only what the grantors possessed at the time of the conveyance and not an ongoing interest in the grantors' future potential interests.

{¶60}    Appellants contend that appellees Keylor, et al. are incorrect that estoppel by deed does not apply because the deed conveyed no future interests.  They assert that the deed does not need to have after-acquired property language in order to apply. They contend that Olive, Martha, Bonnie, and Margaret and their heirs are estopped by deed from denying that Byron and Donah and their heirs acquired title to the mineral rights underlying the property when Anna died.

{¶61}    We hold that estoppel by deed does not apply to the oil and gas interests reserved for Anna. A 1/2 oil and gas interest was reserved for Anna and appellants accepted the deed between Byron and Donah and Anna, Olive, Martha, Bonnie, and Margaret. By virtue of the conveyance, appellants cannot deny an oil and gas reservation

for Anna apart from her daughters. It could therefore be passed to her heirs. The reservation of oil and gas rights for Anna precludes Byron and Donah, and their heirs and assigns, from denying this reservation.

**{¶62}** Finally, appellants request that the Court find that Anna reserved only 1/6 of an interest since she reserved a 1/2 interest and did not own that amount. Appellees request that if this Court holds that Anna did not reserve 1/2 of the oil and gas interest, the Court should interpret the deed as reserving Anna's full 1/3 interest in the oil and gas. Since we find that the reservation of the oil and gas to Anna was a combined interest, the reservation was to 1/2 of the entire mineral interest. Accordingly, this argument is moot.

**{¶63}** Accordingly, appellants' third assignment of error lacks merit and is overruled.

**{¶64}** For the above reasons, the Court affirms the trial court's order granting summary judgment in favor of appellees Jeffrey and Melanie Bates and finding that the reservation deed clearly and unambiguously reserved a life estate in the property for Anna and reserved to her a 1/2 oil and gas interest. This Court also affirms the trial court's order finding that at the time of her death, Anna Bates owned a 1/ 2 interest in all of the oil and gas interest in the described parcels. This Court affirms the trial court's quiet title order as well.

Robb, J., concurs.

D'Apolito, J., concurs.

Case No. 21 NO 0482

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Noble County, Ohio, is affirmed.

Third-Party Defendants/appellees have filed a Notice of Suggestion of Death of Jon N. Bates and a Motion for Substitution pursuant to App. R. 29(A). They state that Jon N. Bates died on February 9, 2020 and they request that the Court substitute Alice Bates, the surviving spouse of Jon N. Bates, for Jon N. Bates as she is the sole beneficiary of his estate. This Court GRANTS the motion and substitutes Alice Bates for Jon N. Bates in this case.

Third-Party Defendants/appellees have filed a Notice of Suggestion of Death of Bonnie J. McElfresh, also known as Bonnie J. Bates, and a Motion for Substitution pursuant to App. R. 29(A). They state that Bonnie J. McElfresh, also known as Bonnie J. Bates, died on September 24, 2021 and they request that the Court substitute Diane Brown, the daughter and proposed administrator of the estate of Bonnie J. McElfresh, also known as Bonnie J. Bates. This Court GRANTS the motion and substitutes Diane Brown, the daughter and proposed administrator of the estate of Bonnie J. McElfresh, also known as Bonnie J. Bates, in this case.

Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**